**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

**No. 98-60648
Summary Calendar**

_____

**JEFF SIMMONS,**

**Petitioner-Appellant,**

**versus**

**JAMES V. ANDERSON, SUPERINTENDENT,
MISSISSIPPI STATE PENITENTIARY;
MIKE MOORE, Attorney General,
State of Mississippi,**

**Respondent-Appellees.**

_____

**Appeal from the United States District Court
for the Northern District of Mississippi
(2:96-CV-161-D-B)**

_____

February 2, 2000

Before SMITH, BARKSDALE, and PARKER, Circuit Judges.

PER CURIAM:[*]

Jeff Simmons, granted a certificate of appealability (COA) for this state prisoner habeas application, contends, _pro se_, that the trial court erred when it denied his request for _in camera_ review, for possible exculpatory material, of the personnel files of two police officers who were to testify at his trial, thereby, violating the Sixth and Fourteenth Amendments.  We **AFFIRM**.

I.

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

On 12 June 1991, Cullum, acting as an informant for the Clarksdale Police Department, entered the Simmons' store and sought to purchase illegal drugs. Simmons arranged for Cullum to return to the store to complete the sale. The conversation was recorded.

Cullum returned to the police station and removed the recording device. Cullum, observed by Officers Gibson and Thomas, left to purchase cigarettes and a soft drink. Prior to the recording device being reattached, and while Cullum was driving through town, Simmons flagged him down; still under police observation, they went to the home of Simmons' mother. Simmons went in, obtained the drugs, and sold them to Cullum for $40 in bills, whose serial numbers had been recorded. The Officers observed the two individuals, but did not see the drugs trade hands, and the $40 was *not* recovered. Cullum returned to the police station and turned in the drugs.

Cullum was later hired by the Clarksdale Police Department. Prior to trial, defense counsel moved for discovery disclosure, including the employment files of Cullum and Officer Gibson (one of the two surveillance officers).

The City moved for a protective order, based on Mississippi law requiring that such employment matters be kept confidential. Simmons claimed that there was information in the files that might concern Cullum's and Gibson's veracity. Simmons' attorney, however, admitted that he did *not* know what was in the files. The trial court granted the protective order, but left open the

possibility of *in camera* inspection, if Simmons could demonstrate an adequate basis for it.

At the time of trial, neither Cullum nor Gibson was employed by the Clarksdale Police Department. Cullum had been terminated; Gibson had resigned.

On 3 September 1992, Simmons was convicted of two counts of sale of a controlled substance, and was sentenced, *inter alia,* to 20 years. His direct appeal was denied on 25 April 1995. After denial of his state application for post-conviction relief, this federal application was filed in October 1996; it was denied. His COA-request was denied in October 1998.

In June 1999, our court granted a COA on the following two issues: whether the trial court violated the Due Process Clause of the Fourteenth Amendment and the Compulsory Process Clause of the Sixth Amendment, as set forth in **Pennsylvania v. Ritchie**, 480 U.S. 39 (1987), when it refused to allow Simmons to subpoena the personnel records of two state witnesses; and whether he was denied effective assistance of counsel, because counsel did *not* raise that constitutional issue on direct appeal.

## II.

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-32, 110 Stat. 1214 (AEDPA), applies, because Simmons filed his federal application subsequent to its enactment. *See* **Green v. Johnson**, 116 F.3d 1115, 1119-20 (5th Cir. 1997). Under AEDPA, federal habeas is *not* available to a state prisoner

- 3 -

with respect to any claim *that was adjudicated on the merits in the State court proceedings* unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).

## A.

Simmons claimed on direct appeal that the personnel records should have been discoverable, or, at a minimum, subject to *in camera review*. The Mississippi Court of Appeals found *no* error in the trial court's denying access, citing **White v. State**, 498 So.2d 368 (Miss. 1986), which holds that police officers' personnel files should *not* be sifted through for impeachment purposes. *See* **Simmons v. State**, No. 92-KA-01242-COA, slip op. at 4-5 (Miss. App. 25 Apr. 1995).

On direct appeal, however, Simmons did *not* posit the denial of access as being violative of the federal constitution. His appellate brief cited only state law; he did note, for the first time in his reply brief, that the State had violated his federal constitutional rights, but did *not* provide any argument. Moreover, his application for state post-conviction relief did *not* raise whether, under the United States Constitution, he had a right to review the records.

- 4 -

As noted, the State court opinion for the direct appeal cites only state law to support its ruling that Simmons did *not* have a right to review the files. Accordingly, Simmons' present constitutional claim was *not* adjudicated on the merits in the state-court proceeding.

Normally, we could *not* review Simmons' habeas application, because he has *not* exhausted his state remedies. *See **Whitehead v. Johnson***, 157 F.3d 384, 387 (5th Cir. 1998); 28 U.S.C. §2254(b)(1)(A). The State, however, has conceded that Simmons has done so, thereby waiving exhaustion. ***McGee v. Estelle***, 722 F.2d 1206, 1211-14 (5th Cir. 1984); 28 U.S.C. §. 2254(b)(1)-(3).

Accordingly, because Simmons' claim was *not* adjudicated on the merits, the above-quoted strict AEDPA standard for relief under 28 U.S.C. § 2254(d) is *not* applied; instead, this claim is reviewed de *novo.* ***Miller v. Johnson***, No. 98-10916, 2000 WL 4950, *1, *5 (5th Cir. 5 Jan. 2000); ***Nobles v. Johnson***, 127 F.3d 409, 416 (5th Cir. 1997), *cert. denied,* 523 U.S. 1139 (1998).

Simmons relies on ***Ritchie*** as requiring these records be provided for *in camera* review under both the Compulsory Process Clause and the Due Process Clause. In ***Ritchie***, however, the Supreme Court stated it has

> never squarely held that the Compulsory Process Clause guarantees the right to discover the *identity* of witnesses, or to require the government to produce exculpatory evidence. ... Instead, the Court traditionally has evaluated claims such as those raised by Ritchie under the broad protections of the Due Process clause of the Fourteenth Amendment.

***Ritchie***, 480 U.S. at 56.

- 5 -

To establish a due process violation under **Brady v. Maryland**, 373 U.S. 83, 87 (1963), Simmons must demonstrate that the evidence was suppressed; the suppressed evidence was favorable to his defense; and the suppressed evidence was *material* to guilt or punishment. Evidence is *material* only if there is a reasonable probability that, had the evidence been disclosed, the resulting proceeding would have been different. *E.g.*, **United States v. Lowder**, 148 F.3d 548, 551 (5th Cir. 1998).

1.

At trial, Simmons' counsel was able to quite effectively cross-examine Cullum. Cullum admitted that he had used drugs with Simmons; that, if he helped "bust" Simmons, he was to be hired by the Clarksdale Police Department; that he continued to use drugs while employed by that department; and that he was only employed for a short period of time. Cullum's testimony was characterized by the trial judge, outside the presence of the jury, as the "worst I have seen".

Officer Gibson was also extensively cross-examined. Moreover, defense counsel pointed out the inconsistencies in Gibson's reports; and that Gibson did *not* follow normal procedure — specifically, that he did *not* search Cullum's car prior to the transaction. Therefore, Simmons' counsel established that it was possible that Cullum had the drugs *prior to* the charged transaction with Simmons.

In **Ritchie**, the defendant was accused of a series of sexual crimes against his child. Child and Youth Services (CYS), a state

investigatory body, investigated the allegations and prepared a report.

> During pretrial discovery, Ritchie served CYS with a subpoena, seeking access to the records concerning his daughter. Ritchie requested disclosure of the file related to the immediate charges, as well as certain records that he claimed were compiled in 1978, when CYS investigated a separate report by an unidentified source that the Ritchie's children were being abused.

*Ritchie*, 480 U.S. at 43. Here, however, Simmons sought the personnel files of two officers *only* to search for potential impeachment material. As noted, defense Counsel admitted that he did *not* know what was in the files.

Simmons' request to *search* for potential impeachment evidence was vague, *not* specific like Ritchie's. Accordingly, the posture of Simmons's claim is distinguishable from that in *Ritchie*. And, the weight of the evidence against Simmons, including the tape and the testimony of Officer Thomas (the other surveillance officer), whose credibility was *not* called into question, is far greater than in *Ritchie*. (Thomas was indicted, *more than three years after Simmons' conviction*, for conspiracy to possess a controlled substance. He was found guilty in March 1996.)

The credibility of Cullum and Gibson was challenged extensively on cross-examination. Simmons has *not* demonstrated that the resulting proceeding would have been different had he received the files. Accordingly, pursuant to our *de novo* review, the *Brady* claim fails.

2.

On the other hand, a defendant seeking *only* an *in camera* inspection to determine whether certain files contain **Brady** material need *only* make a plausible showing that the file will produce material evidence.  **Lowder**, 148 F.3d 548 at 551.  Mere speculation, however, is *not* sufficient to require a remand for such review. **United States v. Balliviero**, 708 F.2d 934, 943 (5th Cir. 1983).

At the evidentiary hearing, Simmons' counsel stated:

> True enough I don't know what is in those files. ... There may not be anything that's in there that would go to their truthfulness or veracity or show bias on the part of these officers. But there may be.  And if there is, I think I'm entitled to know about it.

Simmons was *not* searching for material evidence; instead, he was seeking general impeachment evidence.

Simmons does *not* contend that the information in the files concerned his guilt or innocence; he wants only to know why the Officers were terminated.  He is still seeking impeachment evidence, contending that, because the Officers might have been terminated  for reasons affecting their truthfulness and veracity, it is material.

Even assuming the files contain impeachment evidence, and as discussed *supra*, there is *not* a reasonable probability that, had the evidence been disclosed, the result of the trial would have been different.  Accordingly, Simmons has *not* demonstrated that it is plausible that the officers' files contain material information.  Therefore, remand for an *in camera* inspection is *not* required.

B.

Simmons bases his ineffective assistance contention on his attorney, on direct appeal, *not* raising **Ritchie** or otherwise claiming violation of a constitutional right concerning the denial of access.  For such ineffective assistance, it must be established that counsel's performance was deficient in that it fell below an objective standard of reasonable professional service, and that the defendant was prejudiced by the deficient performance.  *See* **Strickland v. Washington**, 466 U.S. 668 (1984).

On appeal, counsel is *not* required, obviously, to present a meritless point.  As reflected in part II. A., Simmons has *not* shown the requisite prejudice.

III.

For the foregoing reasons, the denial of habeas relief is

*AFFIRMED*.