**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**
No. 97-10078

UNITED STATES OF AMERICA,

                    Plaintiff-Appellee,

versus

PAUL Z. LOWDER, also known as P.Z.,

                    Defendant-Appellant.

_____

Appeals from the United States District Court
For the Northern District of Texas
_____

July 28, 1998

Before GARWOOD, DAVIS, and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Paul Z. Lowder appeals his conviction for conspiracy to distribute over one thousand kilograms of marijuana and possession with intent to distribute approximately six hundred pounds of marijuana. Lowder also challenges the district court's imposition of a 340-month sentence. We affirm.

                    I

On May 7, 1996, the government filed a five-count superseding indictment against the appellant, Paul Z. Lowder ("Lowder"), his sons Richard Lowder ("Richard") and James Lowder ("Jim"), and eight other defendants, including Michael Terry. Count One charged all

the defendants, including Lowder, Richard, Jim, and Terry with conspiracy to distribute over one thousand kilograms of marijuana in violation of 21 U.S.C. § 846. Count Two charged that on or about April 4, 1995, Lowder, Richard, and Terry possessed with intent to distribute approximately six hundred pounds of marijuana in violation of 21 U.S.C. § 841(a)(1). Count Four charged that certain of Lowder's assets were subject to forfeiture under 21 U.S.C. § 853. The remaining counts did not involve Lowder.

Richard pled guilty before trial, and the government proceeded against Lowder, Jim, and Terry. At trial, Paul M. Lowder ("Paul M."), son of the appellant, Paul Z. Lowder, testified that he, his father, and two of his brothers were deeply involved in the marijuana business. Other cooperating co-defendants testified to the same effect. Richard, on the other hand, testified for his father, alleging that although he and his brother Paul M. ran a thriving marijuana business, his father, Lowder, had nothing to do with drugs.

With regard to Count Two specifically, Jerry Lee Hathcock, a cooperating co-defendant, and Paul M. testified that on April 4, 1995, they waited with Terry and Richard at a hotel in Waxahachie, Texas for a load of marijuana to arrive. The testimony indicated that some time in the afternoon, a large bus arrived with hundreds of pounds of marijuana packed in U-Haul boxes. The government presented the jury with pictures of a bus that both Hathcock and Paul M. identified as the one that carried the marijuana to Waxahachie. The vehicle pictured was a large, customized Blue Bird

bus, which other testimony indicated had a sticker price of approximately $250,000. The government introduced evidence that Lowder owned just such a bus, which he had purchased with cash. Hathcock could not identify the driver of the Blue Bird bus, but Paul M. stated that it was his father, Lowder. Richard, in testifying for his father, did not deny being present at the scene and helping to unload the marijuana, but he claimed that the driver was a heavy-set man with red hair named Sean Puopolo—not his father.

The jury acquitted Jim and Terry on all counts, but convicted Lowder of conspiracy as charged in Count One and possession with intent to distribute as charged in Count Two. At sentencing, the district court overruled Lowder's objections to the Pre-Sentence Report ("PSR") and assigned an offense level of 40, reflecting findings that Lowder had obstructed justice by suborning Richard's perjured testimony, was responsible for the total amount of drugs possessed and sold by his co-conspirators, and had been a leader/organizer of the enterprise. Lowder filed a timely appeal, but before we disposed of the case, Lowder moved in the district court for a new trial, alleging that newly discovered evidence could demonstrate his innocence of the crimes charged. Included with this motion was a request that the district court conduct an *in camera* inspection of any government file existing on the drug trafficking activities of the now deceased Sean Puopolo, in order to determine whether such file(s) contained material required to be disclosed to the defense under *Brady v. Maryland*, 373 U.S. 83, 83

S. Ct. 1194, 10 L. Ed. 2d 215 (1963).  On Lowder's unopposed motion, we granted Lowder a stay of time for the filing of his appellate brief until the district court ruled on Lowder's motions. The district court subsequently denied these motions, and Lowder now proceeds with his appeal.

## II

Lowder first alleges that the district court erred in denying his request for an *in camera* inspection of the government's file on the narcotics activities of Sean Puopolo in order to determine whether that file contains the type of evidence that must be disclosed to the defense under *Brady v. Maryland, supra.*  We review the district court's *Brady* determination *de novo*.  *See United States v. Dixon*, 132 F.3d 192, 199 (5th Cir. 1997).

In order to establish a due process violation under *Brady*, a defendant must show that: (1) evidence was suppressed;  (2) the suppressed evidence was favorable to the defense; and (3) the suppressed evidence was material either to guilt or to punishment. *See Brady*, 373 U.S. at 87, 83 S. Ct. at 1196-97; *United States v. Aubin*, 87 F.3d 141, 148 (5th Cir. 1996), *cert. denied*, ___ U.S. ___, 117 S. Ct. 965, 136 L. Ed. 2d 850 (1997).  "[E]vidence is 'material' under Brady, and the failure to disclose it justifies setting aside a conviction, only where there exists a 'reasonable probability' that had the evidence been disclosed the result at trial would have been different." *Wood v. Bartholomew*, 516 U.S. 1, 5, 116 S. Ct. 7, 10, 133 L. Ed. 2d 1 (1995).  Nevertheless, a defendant seeking merely an *in camera* inspection to determine

-4-

whether certain files contain *Brady* material need only make a "plausible showing" that the file will produce "material" evidence. *See Pennsylvania v. Ritchie*, 480 U.S. 39, 58 n.15, 107 S. Ct. 989, 1002 n.15, 94 L. Ed. 2d 40 (1987).

In rejecting Lowder's request for an *in camera* inspection, the district court assumed "that the government possessed evidence of Puopolo's drug trafficking activity and withheld such evidence," but nevertheless determined that the absence of this evidence did not "taint" Lowder's trial. We agree. The mere fact that Puopolo participated in the marijuana trade says nothing about Lowder's guilt or innocence and thus does not implicate the core concerns of *Brady*. *See, e.g., United States v. Agurs*, 427 U.S. 97, 112, 96 S. Ct. 2392, 2401, 49 L. Ed. 2d 342 (1976) ("The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt."). Moreover, even if Lowder might have used some of the government's information to impeach Agent Styron, who testified that no one moves marijuana the way Richard claims Puopolo did, this information hardly "put[s] the whole case in . . . . a different light," and certainly does not raise a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433, 435, 115 S. Ct. 1555, 1565-66, 131 L. Ed. 2d 490 (1995). The government's case against Lowder consisted of testimony from numerous witnesses who directly implicated Lowder in a conspiracy to possess and distribute literally tons of marijuana, corroborated by hotel records, credit card records, and

numerous financial documents.  Nothing that Lowder might find in Puopolo's file would undermine our confidence in the jury's finding that Lowder was guilty of conspiracy and guilty of using his Blue Bird bus to transport almost six hundred pounds of marijuana to his son Richard in Waxahachie, Texas.  *See, e.g., Spence v. Johnson*, 80 F.3d 989, 998 (5th Cir. 1996) (finding no violation of *Brady* when evidence "does not undermine confidence in the jury's verdict").  Accordingly, we find no error in the district court's denial of Lowder's request for an *in camera* inspection of any government file existing on Sean Puopolo.

III

Lowder also claims that the district court erred in denying his motion for a new trial based on evidence that Lowder alleges to be newly discovered.  We review the district court's denial of a motion for new trial based on allegedly newly discovered evidence only for an abuse of discretion.  *See United States v. Jaramillo*, 42 F.3d 920, 924 (5th Cir. 1995).

In order to warrant a new trial on the basis of newly discovered evidence, a defendant must demonstrate that: (1) the evidence is newly discovered and was unknown to the defendant at the time of trial;  (2) failure to detect the evidence was not due to a lack of diligence by the defendant;  (3) the evidence is not merely cumulative or impeaching;  (4) the evidence is material; and (5) the evidence introduced at a new trial would probably produce an acquittal.  *United States v. Pena*, 949 F.2d 751, 758 (5th Cir. 1991).  Here, Lowder claims that the affidavit of Sonny

-6-

Knight, an employee of Traylor's Motor Homes ("Traylor"), demonstrates that Lowder's Blue Bird bus was parked on Traylor's lot on the date Lowder allegedly drove to Waxahachie to meet Richard, Paul M., and Hathcock. The affidavit never explicitly states that the Blue Bird bus was on the lot on April 4, 1995, but Knight does swear that he was working on April 3-5, 1995, and "at no time did [Lowder] leave or return in the Blue Bird."

Even assuming *arguendo* that this alibi, if believed, would "probably produce an acquittal" for Lowder (at least on Count Two), Lowder has not met his burden of demonstrating that the failure to procure Knight's testimony at trial was not the result of his own lack of diligence. *See United States v. Sullivan*, 112 F.3d 180, 183 n.3 (5th Cir. 1997) (collecting cases on due diligence in the context of motions for new trial). Lowder states in an affidavit attached to his motion for new trial that he informed his attorney well in advance of trial that Lowder thought the Blue Bird bus was parked on Traylor's lot on April 4, 1995. Indeed, Lowder himself professes bewilderment as to why his attorney might not have interviewed all of Traylor's employees to substantiate this claim. While naturally one might sympathize with Lowder's good faith in his attorney, the heart of that complaint is ineffective assistance of counsel, not "newly discovered evidence." *Cf. id.* (phrasing the question for review in a newly discovered evidence case as whether the defendants' *attorneys* had exercised due diligence in obtaining the allegedly "new" material); *Butts v. Wainwright*, 575 F.2d 576, 578 (5th Cir. 1978) (indicating that lack of diligence in pursuing

evidence may give rise to a claim for ineffective assistance of counsel).  Thus, because Lowder has failed on the face of his own affidavit to demonstrate due diligence, he is not entitled to a new trial.  *See*, *e.g.*, *United States v. Time*, 21 F.3d 635, 642 (5th Cir. 1994) (finding a lack of due diligence when the defendant knew of the allegedly relevant information and had an opportunity to investigate the matter further).

IV

With regard to his sentence, Lowder alleges that the district court erred in following the PSR's recommendation that he (1) be held responsible for 6,622 kilograms of marijuana, (2) receive a two-level obstruction of justice enhancement for suborning or attempting to suborn perjury, and (3) receive a four-level enhancement as a leader/organizer of criminal activity.  We review the trial court's legal interpretation and application of the sentencing guidelines *de novo* and its factual findings for clear error.  *United States v. Parker*, 133 F.3d 322, 329 (5th Cir. 1998).  "Although a district court must resolve disputed issues of fact if it intends to use those facts as a basis for sentencing, the court can adopt facts contained in a PSR without inquiry, if those facts ha[ve] an adequate evidentiary basis and the defendant does not present rebuttal evidence."  *See United States v. Puig-Infante*, 19 F.3d 929, 943 (5th Cir. 1994) (citation omitted).  "Mere objections do not suffice as competent rebuttal evidence."  *Parker*, 133 F.3d

at 329.[1]

A

The Sentencing Guidelines authorize an adjustment for obstruction of justice "when a defendant engages in conduct which 'obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense.'" *United States v. Graves*, 5 F.3d 1546, 1555 (5th Cir. 1993) (quoting U.S.S.G. § 3C1.1). Suborning perjury is one type of obstructive conduct contemplated by the drafters of this section. *See* U.S.S.G. § 3C1.1 app. note 3(b). We review a district court's finding of obstructive conduct only for clear error. *United States v. Pofahl*, 990 F.2d 1456, 1481 (5th Cir. 1993). "A factual finding is not clearly erroneous as long as it is plausible in the light of the record read as a whole." *United States v. Cluck*, 143 F.3d 174, 180 (5th Cir. 1998).

Here, Lowder concedes that the district court did not commit clear error in determining that his son Richard committed perjury by testifying under oath that Lowder did not supply him with marijuana. Lowder also concedes that the district court correctly

---

[1] The district court relied on this standard of review to reject all of Lowder's objections to the PSR because Lowder presented no sworn rebuttal evidence. *See Parker*, 133 F.3d at 329. To the extent that the district court based its sentencing determinations on facts found by the PSR, we agree. *See id.* To the extent that Lowder's objections involve only challenges to the PSR's conclusions, however, we will address those claims on the merits. *Cf. United States v. Martinez-Cortez*, 988 F.2d 1408, 1415 (5th Cir. 1993) (holding that even when the defendant made no objections to the PSR below, we must address whether the PSR alone "even when accepted as true and reliable" was "legally []adequate" to support the relevant enhancement).

-9-

inferred that Lowder must have known of Richard's perjury.  Lowder claims instead that the district court erred by concluding that Lowder "procured" the false testimony because Lowder's attorney, not Lowder himself, called Richard to the stand.  We disagree.

A defendant charged with an enhancement under U.S.S.G. § 3C1.1 "is accountable for his own conduct and for conduct that he aided and abetted, counseled, commanded, induced, procured, or willfully caused."  U.S.S.G. § 3C1.1 app. note 7.  Thus, even if Lowder did no more than "counsel" or "induce" his lawyer to call Richard as a witness, the enhancement was properly applied.  We do not find it implausible in light of the record as a whole that Lowder in fact gave such counsel or inducement.  Particularly in light of the government's well-known threats to seek a perjury enhancement for Richard if he testified for his father, the district court could reasonably infer that Lowder and his attorney discussed Richard's testimony before trial.  During those discussions, we certainly consider it plausible if not likely that Lowder's attorney would have suggested to Lowder that the government might seek a similar enhancement against anyone using Richard's testimony.  Given that the ultimate result of these discussions was the decision of Lowder's attorney to call Richard as a witness, we again see nothing implausible about the inference that Lowder counseled his attorney in favor of calling Richard))perhaps indicating a desire to accept the risk at sentencing, or perhaps inducing the attorney to call Richard by assuring him that the proposed testimony was truthful.  In any event, whatever discussions actually took place

between Lowder and his attorney, these plausible inferences, taken together, sufficiently support the district court's factual finding, particularly in light of Lowder's failure to submit any sworn rebuttal. The mere fact that we ourselves might have drawn different or less certain conclusions based on the record before us is simply irrelevant.

In the alternative, Lowder contends that enhancing his sentence for presenting perjured testimony undermines his right to present a defense. Yet just as "a defendant's right to testify does not include a right to commit perjury," *see United States v. Dunnigan*, 507 U.S. 87, 96, 113 S. Ct. 1111, 1117, 122 L. Ed. 2d 445 (1993), Lowder's right to present witnesses in his own defense does not encompass a right to suborn perjury. We therefore find no clear error in the district court's two-level adjustment for obstruction of justice.

B

Lowder also challenges the district court's assessment of his base offense level, calculated based on the PSR's recommendation that Lowder be held responsible for 6,622 kilograms of marijuana. So long as the sentencing court's adoption of a particular drug quantity is plausible in light of the record as a whole, it is not clearly erroneous. *United States v. Sparks*, 2 F.3d 574, 586 (5th Cir. 1993). Lowder presents no competent rebuttal evidence to refute the PSR's factual determinations regarding the scope of the conspiracy, and we therefore find no clear error. *See United States v. Angulo*, 927 F.2d 202, 205 (5th Cir. 1991) ("If

-11-

information is presented to the sentencing judge with which the defendant would take issue, the defendant bears the burden of demonstrating that the information cannot be relied upon because it is materially untrue, inaccurate or unreliable."); *Parker*, 133 F.3d at 329 ("Mere objections do not suffice as competent rebuttal evidence."). Moreover, the base offense level assigned by the PSR covers offenses involving 3,000 to 10,000 kilograms of marijuana, an amount amply supported by the testimony presented at trial.

C

Lowder's final contention is that the district court erred in following the PSR's recommendation that Lowder receive a four-level adjustment for a leader/organizer role pursuant to U.S.S.G. § 3B1.1(c). Lowder claims that he was at most a supplier for his sons, but did not organize or direct any of their distribution activities. We review the district court's determination regarding the defendant's leadership status only for clear error. *See United States v. Powell*, 124 F.3d 655, 667 (5th Cir. 1997).

In support of its recommendation for the four-level adjustment, the PSR made no factual findings, but merely stated that a federal agent would be available at sentencing to justify the leader/organizer conclusion. No agent appeared at sentencing, but the district court found "based upon the trial testimony, the jury's verdict and inferences from the available facts that Mr. Lowder exercised a leadership role so as to warrant an enhancement under Guideline Section 3B1.1." On appeal, the government points to two pieces of evidence in support of this finding: (1) the

-12-

testimony of Richard's wife, Tonya Lowder ("Tonya"), that Lowder continuously telephoned her home to inquire about Richard's progress in selling "trucks" (allegedly a code-word for marijuana), and (2) Tonya's testimony that Lowder, when confronted about his involvement in marijuana distribution, claimed that he was only trying to "help" his sons by giving them a "good start."[2]

While we do note that this evidence is rather thin in terms of demonstrating Lowder's control or authority over other individuals, *see* U.S.S.G. 3B1.1, app. note 4, we cannot say that the district court clearly erred in making those inferences from Tonya's testimony. *See United States v. Valencia*, 44 F.3d 269, 273 (5th Cir. 1995) (affirming district court's factual finding that defendant was a leader or organizer when it was "plausible, in light of the record read as a whole, that Valencia was more than just a supplier"). In *Valencia*, we faced similar facts, where the defendant claimed to be merely a supplier to the relevant organization, rather than a leader or organizer. *Id.* at 272. Stressing the extreme deference of the "clear error" standard, we affirmed, noting that the district court's finding regarding Valencia's role was supported by evidence in the record indicating

---

[2] We decline the government's invitation to infer from Lowder's familial relationship to the other conspirators that he was somehow "in charge" of the operation. Although we recognize that in the correct context, family relationships, along with other probative evidence, may give rise to reasonable inferences regarding the power structure of a criminal enterprise, the government has presented no evidence here supporting the idea that Lowder's children looked to Lowder for guidance or authority. In the absence of such evidence, we will not attempt to extrapolate Lowder's role in the criminal enterprise.

(1) the role of one of Valencia's co-defendants and (2) the "connection" between that co-defendant and Valencia. *Id.* at 273. In support of this decision, we also cited the report of a magistrate judge, who noted in a written statement that "Valencia explained that he wanted Moreno [a co-defendant] to accompany Mills and Stewart on [a particular] delivery to make sure that the money got back to Houston so that Valencia could pay his source for the drugs." *Id.* at 273 & n.4. In light of this report, we opined that the district court "could easily infer that Valencia played an organizational role over and above that of supplying the [drugs]." *Id.* at 273 n.4. In addition, we noted that "[a]lthough the quantity of [drugs] is a nondispositive factor in the § 3B1.1 determination, it is a factor nonetheless." *Id.* at 273.

Here, we also have a defendant claiming to have functioned merely as a supplier, but nevertheless having strong business connections to the main players in an organization devoted to the sale and distribution of large amounts of marijuana. Those business ties, in addition to Tonya's testimony regarding Lowder's demonstrated interest in the progress of her husband's sales indicate that the district court committed no clear error in inferring that Lowder occupied an organizational or leadership role in the conspiracy. We therefore will not disturb the district court's enhancement under U.S.S.G. § 3B1.1.

V

In summary, we find no error in the district court's denial of an *in camera* inspection of certain files allegedly possessed by the

government, its denial of Lowder's motion for a new trial based on allegedly newly discovered evidence, or its sentencing determinations. The judgment of the district court is in all respects AFFIRMED.