IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-31370
_____


UNITED STATES OF AMERICA

                              Plaintiff - Appellee

        v.

MICHAEL J BOWLER

                              Defendant - Appellant

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
_____

May 25, 2001

Before KING, Chief Judge, and REAVLEY and JONES, Circuit Judges.

PER CURIAM:

Defendant-Appellant Michael J. Bowler appeals from the district court's denial of his motion for a new trial based on newly discovered evidence. For the following reasons, we AFFIRM.


**I. FACTUAL AND PROCEDURAL HISTORY**

On November 17, 1994, Defendant-Appellant Michael J. Bowler was charged in a fifteen-count superseding indictment with one

count of conspiracy to commit mail fraud, in violation of 18 U.S.C. §§ 2 and 371, and fourteen substantive counts of mail fraud, in violation of 18 U.S.C. §§ 2 and 1341.[1]  The charges against Bowler arose out of his management of Pelican State Mutual Insurance Company ("Pelican") and its subsidiary Magnolia Fire and Casualty Insurance Company ("Magnolia") from August 1986 to August 1992.  The indictment alleged that Bowler "devised and intended to devise a scheme and artifice to defraud," that as part of that scheme Bowler created the false impression that Pelican was solvent in order to obtain money and benefits for his personal use, and that he used the United States Postal Service to execute the scheme.

On July 7, 1995, the jury returned a verdict of guilty on one count of conspiracy to commit mail fraud and four of the substantive counts of mail fraud, including, <u>inter alia</u>, mailing Pelican's 1991 Annual Statement on March 16, 1992; mailing Pelican's March 31, 1992 Quarterly Statement on May 14, 1992; and mailing the 1991 Annual Statements of Pelican and Magnolia on May 22, 1992 ("Count Fifteen").  On January 29, 1996, Bowler was sentenced to terms of sixty months imprisonment for the conspiracy count and three of the substantive mail fraud counts, to be served concurrently, and to one term of eighteen months on

---

[1]  The indictment charged both Bowler and his brother-in-law Walter Sentenn, Jr. with the fifteen counts.  Only Bowler's conviction is the subject of this appeal.

Count Fifteen, to be served consecutively. He was also required to pay $100,000 in restitution and ordered to be placed on a three-year term of supervised release following his term of imprisonment.

On May 28, 1997, this court affirmed the judgment of the district court. Bowler's petition for rehearing was denied, and this court issued its mandate on February 26, 1998. On October 5, 1998, Bowler's petition for a writ of certiorari was denied by the Supreme Court.

Bowler, proceeding pro se, filed a 28 U.S.C. § 2255 motion[2] (the "§ 2255 motion") on April 19, 1999, and a motion for a new trial based on newly discovered evidence pursuant to Federal Rule of Criminal Procedure 33 ("Rule 33 motion") on May 10, 1999, in district court. In his Rule 33 motion, Bowler alleged that the final accounting of the Louisiana Insurance Guaranty Association ("LIGA")[3] through March 1999 established that Pelican was not insolvent, and therefore, he should not have been convicted of scheming to cover up Pelican's insolvency.

---

[2] In his § 2255 motion, Bowler argued that his trial counsel had labored under an undisclosed conflict of interest. He argued further that he was denied his right to a jury trial when the district court excused one juror during deliberation and allowed the jury to continue deliberations with only eleven members, without Bowler's express consent.

[3] According to testimony, LIGA "is set up to pay the claims of insolvent property and casualty companies that do business in the State of Louisiana." When Pelican was placed into liquidation, it became the responsibility of LIGA to settle claims against Pelican.

3

The parties filed a series of pleadings in district court regarding Bowler's Rule 33 motion.  The government argued that Bowler's motion was untimely because it was not filed within three years of the jury verdict, as required by the present version of Rule 33, nor did the motion fit within any of the exceptions to the three-year time limit.  Alternatively, the government argued that even if the Rule 33 motion was timely, the new evidence did not meet the standard necessary to warrant a new trial.

Bowler countered that the present version of Rule 33, which became effective December 1, 1998, did not apply to his case and that, under the prior version of Rule 33, which allowed a motion for a new trial to be filed within two years of final judgment, his Rule 33 motion was timely.  Additionally, he asserted that the evidence did meet the requirements necessary for the granting of a new trial.

On November 24, 1999, the district court declined to pass on the procedural bars raised by the government, and, instead, denied both the § 2255 motion and the Rule 33 motion on the merits.  On December 8, 1999, Bowler filed a notice of appeal and a motion for a certificate of appealability ("COA") on the denial of his § 2255 and Rule 33 motions.  On December 15, 1999, the district court denied Bowler's COA, and Bowler subsequently sought a COA from this court.  On June 20, 2000, this court denied Bowler's COA request, holding that Bowler had failed to

4

make a substantial showing of the denial of a constitutional right.  This court also noted, however, that no COA was required for an appeal of the denial of a Rule 33 motion, stating that "[s]hould Bowler wish to continue the appeal from the denial of his motion for new trial, he is directed to discuss in his brief whether the motion was timely under Rule 33."

Bowler appeals from the district court's denial of his Rule 33 motion.[4]

## II. TIMELINESS OF BOWLER'S RULE 33 MOTION

As a threshold issue, we must address the timeliness of Bowler's Rule 33 motion, which turns on whether the amended version of Rule 33, effective December 1, 1998, or the pre-amendment version of Rule 33 is applicable to the present case. We do so because the time limits of Rule 33 are jurisdictional. See United States v. Brown, 587 F.2d 187, 189-90 (5th Cir. 1979); see also United States v. Lussier, 219 F.3d 217, 220 (2d Cir. 2000); United States v. Bramlett, 116 F.3d 1403, 1405 (11th Cir. 1997); Harrison v. United States, 191 F.2d 874, 875-76 (5th Cir. 1951).  "Jurisdiction is a question of law which we review de novo."  Groome Res. Ltd., L.L.C. v. Parish of Jefferson, 234 F.3d 192, 198 (5th Cir. 2000).

---

[4]  We note that Bowler is no longer appearing pro se.

We pause briefly to explain why this inquiry (i.e., which version of Rule 33 applies) is significant in this case. The current Rule 33 provides in relevant part: "A motion for new trial based on newly discovered evidence may be made only within three years after the verdict or finding of guilty." FED. R. CRIM. P. 33. The jury verdict was entered against Bowler on July 7, 1995, but he did not file his Rule 33 motion until May 10, 1999, almost four years later. Under the current Rule 33, Bowler's Rule 33 motion would be untimely, and we would not have jurisdiction to hear it.

However, the Rule 33 in effect prior to December 1, 1998 provided in relevant part: "A motion for a new trial based on the ground of newly discovered evidence may be made only before or within two years after final judgment." FED. R. CRIM. P. 33 (1998) (amended 1998). Importantly, final judgment is measured from the date the appellate court issues its mandate. See United States v. Granza, 427 F.2d 184, 185 n.3 (5th Cir. 1970) ("When a conviction is appealed, a motion for a new trial may only be made before or within two years after the issuance of the mandate of affirmance by the appellate court."). This court issued its mandate on February 26, 1998, and Bowler filed his Rule 33 motion on May 10, 1999. Because his Rule 33 motion was filed within the two-year limit, if the pre-amendment version of Rule 33 applies, Bowler's Rule 33 motion is timely, and we have jurisdiction to hear it.

6

To determine whether the amended version of Rule 33 applies, we look at the order accompanying the submission of the proposed December 1998 amendments to Congress, which states: "That the foregoing amendments to the Federal Rules of Criminal Procedure shall take effect on December 1, 1998, and shall govern all proceedings in criminal cases thereafter commenced and, insofar as just and practicable, all proceedings in criminal cases then pending."  Order of April 24, 1998 of the Supreme Court of the United States Adopting and Amending the Federal Rules of Criminal Procedure, 523 U.S. 1229 (1997).  The language in this enabling act accompanying the amendment to Rule 33 is not unique to the amendment of Rule 33, but is the language submitted by the Court with all such amendments to the Federal Rules.  See, e.g., United States v. Roberts, 88 F.3d 872, 878 (10th Cir. 1996) ("[S]ince 1975, the Supreme Court has used identical language in almost every instance when amending any of the various Federal Rules."), superseded by statute as stated in United States v. Meacham, 115 F.3d 1488, 1491 (10th Cir. 1997); In re Search of Kitty's East (Kitty's East v. United States), 905 F.2d 1367, 1370 (10th Cir. 1990) (quoting same language in reference to the 1989 amendment of Federal Rule of Criminal Procedure 41(e)); United States v. DePrima, 165 F.R.D. 61, 62 & n.2 (E.D. Va. 1996) (quoting same language in reference to the 1995 amendment of Federal Rule of

7

Criminal Procedure 43(b) and noting that "[t]his language is generally sent with rule changes").[5]

The government argues that the plain language of the enabling act indicates that the new Rule 33 applies to <u>proceedings</u> commenced after the effective date of the amendment and, insofar as just and practicable, to proceedings pending on the effective date of the amendment. The government reasons that because there were no proceedings in Bowler's criminal case pending when the new rule took effect, Bowler's Rule 33 motion is a proceeding commenced after the effective date of the amendment, and the new Rule 33 applies. Bowler counters that the new Rule 33 applies only to <u>cases</u> commenced after the effective date of the amendment or, insofar as just and practicable, to proceedings pending on the effective date of the amendment, neither of which applies to his Rule 33 motion. Alternatively, Bowler argues

---

[5] There were three purposes for amending Rule 33. First, the amendment was meant to remove the inconsistent application of the Rule. <u>See</u> FED. R. CRIM. P. 33 advisory committee notes 1998 amendments. Under the prior Rule, some courts had held that "final judgment" indicated the date of the appellate court's judgment, while others held that "final judgment" did not occur until the issuance of the appellate court's mandate, leading to disparities in the amount of time defendants had to file timely motions. <u>See</u> <u>id.</u> Second, the amendment was intended to further consistency within the Rule itself by tying the time for filing Rule 33 motions to the same event, whether the motion was based on newly discovered evidence or on any other grounds. <u>See</u> <u>id.</u> Third, the time limit to file a motion for a new trial based on newly discovered evidence was increased from two years to three years "to compensate for what would have otherwise resulted in less time than that currently contemplated in the rule for filing such motion." <u>Id.</u>

that, even if his case was pending as of the effective date of the new rule, it would not be just and practicable to apply the new rule to his Rule 33 motion because that would have required Bowler to file the motion five months before the effective date of the new rule.

We agree that the timeliness of Bowler's Rule 33 motion turns on whether the phrase "all proceedings in criminal cases then pending," as described in the Supreme Court Order, refers to <u>proceedings</u> pending on the effective date of the amendment or to <u>cases</u> pending on the effective date of the amendment. The precise issue before this court, whether the amendment applies in a case in which final judgment was entered and no motions were pending on the effective date of the amendment, is a matter of first impression for this court.[6]

---

[6] Bowler argues that his interpretation finds support in the holdings of <u>United States v. Jean</u>, No. 92 CR 157-1, 1999 WL 301652 (N.D. Ill. Apr. 29, 1999), and <u>United States v. Zuno-Arce</u>, 209 F.3d 1095 (9th Cir. 2000). However, both of those cases are distinguishable because the defendants' Rule 33 motions were filed <u>before</u> the effective date of the amendment. In <u>Jean</u>, the district court applied the old Rule 33 to the pending Rule 33 motion because it would not have been "just and practicable" to apply the new rule. <u>See</u> 1999 WL 301652, at *2. In <u>Zuno-Arce</u>, the court applied the old Rule 33 to the pending Rule 33 motion, but noted that neither party had even argued that the new Rule 33 should apply. <u>See</u> 209 F.3d at 1097 & n.1. In contrast to these two cases, Bowler filed his Rule 33 motion <u>after</u> the effective date of the amendment.

Courts have not addressed whether the current Rule 33 should apply to a Rule 33 motion filed after the effective date of the amendment, when the amendment to the Rule occurred after the issuance of the mandate by the appellate court and while no motions were pending. We do note that, in an unpublished opinion, the Court of Appeals for the Sixth Circuit summarily

9

Although no courts have addressed the issue in the context of Rule 33, several courts have done so in analogous circumstances (i.e., to determine the applicability of other amendments to the Federal Rules to cases before them).  While these cases have not been called upon to determine whether the precise enabling act language before us is applicable in these precise circumstances, many of these cases have interpreted this "standard language," see supra text, to apply to pending cases, and not merely to pending proceedings.  See, e.g., Roberts, 88 F.3d at 878-79 (stating, in interpreting an amendment to Federal Rule of Evidence 413, that Congress knew how to make amendments "applicable to pending cases" by using the "standard language" (emphasis added)); Silvious v. Pharaon, 54 F.3d 697, 700-01 (11th Cir. 1995) (noting, in interpreting the 1993 amendment to Federal Rule of Civil Procedure 4, that "[t]he plain language of the Supreme Court's order indicates that the district court may apply . . . the rule in effect when the complaint was filed and the case thereby commenced" (emphasis added)); Cleveland v. Porca Co., 38 F.3d 289, 294 (7th Cir. 1994) (interpreting the language,

applied the current Rule 33 to determine that a Rule 33 motion filed in May 1999 was untimely because the jury had convicted the appellant in December 1994.  See United States v. Blue, 238 F.3d 424 (6th Cir. 2000) (unpublished table decision), available at No. 99-4131, 2000 WL 1800499, at *1 (6th Cir. Nov. 30, 2000).  Because the opinion is unpublished and did not  discuss whether the prior version of Rule 33 should have been applied, but simply applied the current Rule 33, we do not consider the case authoritative on the issue.

10

"proceedings in appellate cases then pending," accompanying the 1993 amendment to Federal Rule of Appellate Procedure 3 regarding to "govern pending cases" (emphasis added)); Skoczylas v. Fed. Bureau of Prisons, 961 F.2d 543, 545 (5th Cir. 1992) (stating that "[s]ince the amended [Federal Rule of Civil Procedure 15] took effect on December 1, 1991 (while the case was pending on appeal), we must determine whether it applies to this case" (emphasis added)); In re Jones (Jones v. W.J. Servs., Inc.), 970 F.2d 36, 38 (5th Cir. 1992) (finding, in interpreting the 1991 amendment to Federal Rule of Appellate Procedure, that "proceedings in appellate cases thereafter commenced and, insofar as just and practicable, all proceedings in appellate cases then pending" applied because "it is an 'appellate case[] . . . commenced after December 1, 1991'" (emphasis added)).  Therefore, that the amended Rule 33 applies to cases commenced after December 1, 1998, and, insofar as just and practicable, to cases pending on December 1, 1998, would be in accord with the approach taken in similar contexts.

Interpreting the language in the enabling act to refer to pending cases and not merely to pending proceedings is also supported by the following reasons.  Construing the language in the Supreme Court Order to apply to cases commenced after the effective date of the amendment and to pending cases, insofar as just and practicable, furthers one of the policies behind the amendment, i.e., it avoids allowing the defendant less time to

11

file his Rule 33 motion "than that currently contemplated in the rule for filing such motion." FED. R. CRIM. P. 33 advisory committee notes 1998 amendments. Also, there is a "general rule that courts apply procedural rules as they exist at the time of decision, as long as no manifest injustice results." In re Jones, 970 F.2d at 38; see also Burt v. Ware, 14 F.3d 256, 258-59 (5th Cir. 1994); Skoczylas, 961 F.2d at 546 & n.3. For Bowler's Rule 33 motion to be timely under the amended Rule 33, it would have to have been filed almost five months before the effective date. We believe that to hold him to that limitation would result in manifest injustice.

For these reasons, we find that the new Rule 33 applies to cases commenced after December 10, 1998 or, insofar as just and practicable, to cases pending after the effective date. Because Bowler's case was obviously commenced prior to December 1, 1998, the amended Rule 33 may only be applied in this case if it is just and practicable. We find that applying the amended Rule 33 to Bowler's Rule 33 motion would not be just and practicable. As stated above, if the new Rule 33 were applied, Bowler would have been required to file his Rule 33 motion almost five months before the amended Rule was effective. It would be incongruous to apply the new rule in this situation. See United States v. Jasin, No. CRIM. 91-602-08, 2000 WL 1793397, at *2 (E.D. Pa. Nov. 22, 2000) ("It would be entirely anomalous to apply the current time limit to defendant's motion. Doing so would mean that the

12

motion was barred before amended Rule 33 came into effect."); United States v. Soler, No. 94 CR. 533(TPG), 2000 WL 385514, at *1 (S.D.N.Y. Apr. 17, 2000) ("It would be entirely anomalous to apply the current time limit to defendant's motion.  Doing so would mean that Soler's motion was barred before the revision of Rule 33 even came into effect.").

Applying the prior version of Rule 33, we find that Bowler's Rule 33 motion was filed within two years of final judgment. Therefore, as explained at the outset, the motion is timely, and we have jurisdiction to hear it.

### III. MERITS OF RULE 33 MOTION

We turn next to the merits of Bowler's Rule 33 motion.  We review for an abuse of discretion the district court's denial of a motion for a new trial based on newly discovered evidence.  See United States v. Lowder, 148 F.3d 548, 551 (5th Cir. 1998). Motions for a new trial based on newly discovered evidence are disfavored and reviewed with great caution.  See United States v. Gonzalez, 163 F.3d 255, 264 (5th Cir. 1998).  In order to warrant a new trial on the basis of newly discovered evidence, Bowler must demonstrate that

> (1) the evidence is newly discovered and was unknown to the defendant at the time of trial; (2) failure to detect the evidence was not due to a lack of diligence by the defendant; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material;

13

and (5) the evidence introduced at a new trial would probably produce an acquittal.

Lowder, 148 F.3d at 551. Unless all factors are met, the motion should be denied. See United States v. Sullivan, 112 F.3d 180, 183 (5th Cir. 1997).

Bowler argues that a newly discovered LIGA report (the "1999 LIGA report"), which states the actual amount of money LIGA paid on claims from the date of insolvency to March 1999, warrants a new trial. See supra note 3. The district court found the 1999 LIGA report to be irrelevant. First, the district court noted that the jury had been made aware that an insurance company's solvency must be assessed through statistical projections of future claims and that such actuarial projections are speculative. Second, to the extent the new evidence impeached the testimony and evidence presented by Michael Scruggs, the actuary hired by the Louisiana Department of Insurance, Bowler's counsel had effectively challenged Scruggs's knowledge, qualifications, and credibility at trial. Finally, several witnesses, in addition to Scruggs, had testified that Pelican was insolvent. Based on these factors, the district court held that the "fortuitous fact that fewer claims than were projected were ultimately made does not change the reality that by the time Pelican was seized, the virtually unanimous projections made by the various actuaries and accountants in this case indicated it was 'insolvent' and had been for some time."

14

Bowler argues that the district court erred because "solvency" is not an evidentiary matter, but an objective fact, and because the 1999 LIGA report proves that Pelican was solvent. As such, Bowler was actually innocent. Moreover, Bowler argues that the district court erred in finding that the new evidence was "cumulative and impeaching." He contends that although the evidence is impeaching and cumulative, it is also direct and independent corroboration of Bowler's testimony regarding the adequacy of the loss reserves and warrants the granting of a new trial.

The government avers that the district court did not err in denying Bowler's Rule 33 motion. It contends that (1) the jury was made aware of the uncertain nature of actuarial projections, (2) several actuaries testified that Pelican was insolvent, (3) the evidence contained in the report was substantially the same information provided by a witness at trial, and (4) Bowler had an adequate opportunity to impeach Scruggs at trial. The government argues that the new evidence does not warrant a new trial, but is merely impeaching and cumulative. We agree with the government that the district court's denial of Bowler's Rule 33 motion was not an abuse of discretion.

First, we note that the information contained in the 1999 LIGA report is substantially similar to evidence presented during trial. The 1999 LIGA report states that, as of March 1999, 1468 Pelican and Magnolia files (or claims) had been closed at a cost

15

of $23,696,166.47.[7]  At trial, Lawrence Uter, the associate

executive director of LIGA, testified that the LIGA report on

Pelican through April 1995 (the "1995 LIGA report") stated that

there were 1411 paid or open claims and that total reserve and

disbursements for those claims equaled $23,995,251.48.[8]

Therefore, the district court did not abuse its discretion in

fining that the "newly discovered" 1999 LIGA report was

cumulative of the 1995 LIGA report.

Second, several witnesses testified that Pelican was

insolvent.[9]  Robert F. Wolf, an employee for William M. Mercer,

---

[7]  Additionally, there remain 83 open claims against Pelican
and Magnolia and a reserve projected for those claims of
$2,588,922.  This indicates that the total cost of settling all
1551 claims will be $26,285,088.47.

[8]  It is unclear if the figures from the 1995 LIGA report
include claims against Magnolia.  Not including the Magnolia
figures, the 1999 LIGA report states there are 1338 closed and 79
open claims against Pelican, for a projected total of 1417
claims.  Additionally, the report states that to close those
files has so far cost LIGA $22,694,084 and that LIGA has set
aside a reserve of $2,558,176 for the remaining open claims.  In
other words, even if we excluded the claims against Magnolia, the
reported figures in the 1999 LIGA report are greater, not less,
than those contained in the 1995 LIGA report.

[9]  Bowler contends that much of the evidence and testimony
regarding Pelican's insolvency may not be considered because the
evidence relates to time periods before March 1992, the date of
the first substantive count on which Bowler was convicted.
Because the district court interpreted "the verdict to reflect
that the defendant was acquitted of all charges prior to 1991,"
Bowler argues that the only evidence of insolvency that may be
considered was the testimony and reports of Scruggs and Constance
Korte.  He argues further that because Korte based her report on
Scruggs's analysis, the only evidence of insolvency actually was
Scruggs's analysis, which the new evidence establishes was
incorrect.

16

Inc. ("Mercer"), testified that Mercer was retained at the end of 1991 to form an opinion on the adequacy of the loss reserves contained in Pelican's 1991 annual statement. He informed Lawrence Pratt in January 1992 that the reserves as presented in the annual statement were understated by several million dollars. Further, he testified that if the asset side of the balance sheet was correct, increasing the loss and loss adjustment reserves to the appropriate number would change Pelican's reported $1,883,373 surplus position to a deficit.

Lawrence Pratt, Pelican's executive vice-president of operations and treasurer, testified that Bowler requested a second opinion on the adequacy of the loss reserves. Pelican hired Mihn Trinh to render his actuarial opinion. According to Pratt, although Trinh's numbers were more beneficial to Pelican, had Trinh's numbers been substituted for the numbers on the 1991 annual statement, "the company would have been insolvent, the same result as Mr. Mercer, or Mr. Wolfe's [sic] evaluation."

Scruggs and Constance Korte also testified that Pelican was insolvent. Scruggs described the methodology he used for his

---

We do not interpret the district court's language to preclude consideration of the other actuaries' and accountants' testimony. Although Bowler "was acquitted of all charges prior to 1991," this does not mean that the evidence relating to the financial condition of Pelican during 1991 may not be considered. In fact, Bowler was found guilty of two substantive counts of mailing the 1991 Annual Statements of Pelican and Magnolia for which the issue of Pelican's financial state during 1991 is obviously relevant.

analysis and testified that he concluded that the loss and loss adjustment expense reserves stated in Pelican's March 31, 1992 quarterly report were understated by over $19 million. Using Scruggs's figures, Korte determined that Pelican was insolvent and had a surplus deficiency of about $23 million.[10]

Third, we do not agree that the solvency of Pelican is a fact that may only be determined once all claims have been settled. The determination of the solvency of an insurance company necessarily includes loss reserves for future claims. See Stephens v. Nat'l Distillers & Chem. Corp., 6 F.3d 63, 65 (2d Cir. 1993) ("Because future claims will be a drain on an insurer's resources, 'loss reserves' are established to estimate the value of claims which will be paid on policies which the company is carrying. . . . Although they are only estimates, both case reserves and [incurred-but-not-reported] reserves must be reported as liabilities in the financial records of an insurance company."). The use of actuarial projections is an acceptable way to calculate the adequacy of those reserves. Bowler was free at trial to introduce his own actuarial experts or to challenge the calculations of the government experts.

---

[10]  To the extent that Bowler argues that the 1999 LIGA report proves that Scruggs's testimony and report was incorrect, we find the evidence to be merely impeaching. Bowler had ample opportunity to attempt to impeach Scruggs's testimony and report and did do so. He did not choose, however, to impeach Scruggs either by calling his own actuarial expert or by using the evidence contained in the 1995 LIGA report.

18

Thus, we agree with the district court that the 1999 LIGA report is merely cumulative and impeaching.  We find that the district court's holding that the newly discovered evidence does not warrant a new trial was not an abuse of discretion.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the order of the district court denying Bowler's motion for a new trial.