EDWARD C. PRADO, Circuit Judge,
dissenting:
I agree with the majority that the actions of the government attorneys[1] in this case demean the integrity of the judiciary and- merit the most severe sanctions. But we “cannot permit” these considerations “to alter our analysis, for we are not at liberty to ignore the mandate” of the Federal Rules of Criminal Procedure “in order to obtain ‘optimal’ ... results,” Carlisle v. United States, 517 U.S. 416, 430, 116 S.Ct. 1460, 134 L.Ed.2d 613 (1996). Because the majority opinion relies on extraordinary facts to skirt ordinary procedure, I respectfully dissent.
Before this Court is an appeal of a new-trial order granted under Rule 33(b)(1) of the Federal Rules of Criminal Procedure. Rule 33 contemplates two kinds of motions for new trial: one “grounded on newly discovered evidence,” and one “grounded on any reason other than newly discovered evidence.” Fed.R.Crim.P. 33(b). The former “must be filed within 3 years after the verdict or finding of guilty,” whereas the latter “must be filed within 14 days after the verdict or finding of guilty.” Id.
As the Eleventh Circuit has recognized, “courts apply different standards” depending on whether the motion was filed within fourteen days or after fourteen days.
The trial court’s power with respect to a motion made within [fourteen] days is much broader than one made later than [fourteen] days but within [three] years relying on newly discovered evidence. For motions filed within [fourteen] days, a court has very broad discretion in deciding whether there has been a miscarriage of justice.
After the [fourteen] days, a much more stringent standard applies.
United States v. Hall, 854 F.2d 1269, 1270-71 (11th Cir.1988) (alterations, footnotes, citations, and internal quotation marks omitted) (citing, inter alia, United States v. Rachal, 473 F.2d 1338, 1343 (5th Cir.1973));[2] see also Herrera v. Collins, 506 U.S. 390, 409, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993) (“We have strictly construed the Rule 33 time limits.”).
A district court is without authority to consider a Rule 33 motion based on anything other than newly discovered evidence unless the motion is filed within the fourteen-day period. See United States v. Brown, 587 F.2d 187, 190-91 (5th Cir. 1979);[3] see also United States v. Campa, *361 459 F.3d 1121, 1154 (11th Cir.2006) (en banc) (“A court may not consider motions for new trial based on any other argument than newly discovered evidence outside the [fourteen-day] period.”). Here, the defendants were found guilty on August 5, 2011. Seven days later, the district court granted them additional time to file a Rule 33 motion for a new trial, as contemplated by Rule 45. The defendants’ August 22, 2011, motions for a judgment of acquittal and a new trial were timely. On May 18, 2012, after it was revealed that members of the U.S. Attorney’s office were commenting on NOLA.com, the defendants filed a new motion for a new trial under Rule 33.
The question, therefore, is whether the district court could have implicitly construed the defendants’ May 18, 2012, Rule 33 motion as a renewal of their August 22, 2011, motions for a new trial in “the- interest of justice.”
Although the Fifth Circuit has not spoken on the matter, a robust circuit consensus — encompassing every court to have considered the issue — supports the conclusion that a later, untimely motion cannot relate back to, amend, or renew an original, timely motion. See, e.g., United States v. Bramlett, 116 F.3d 1403, 1405 (11th Cir.1997) (concluding that district courts have no power to construe an untimely motion for a new trial as a renewal of a timely motion);[4] see also Fed.Crim. Rules Handbook pt. II ch. VII, Rule 33 (“A trial court cannot construe a motion for new trial, filed outside the appropriate time period, as a ‘renewal’ of a prior motion ... [or] consider new arguments raised in [such a motion]. A court may not consider motions for new trial based on any other argument than newly discovered evidence outside the time period.” (footnotes and internal quotation marks omitted)). In other words, a defendant cannot rely on the fact of having filed a motion that benefits from the broader, “interests of justice” standard when filing a second motion outside the fourteen-day statutory period; he is left with recourse only to the stricter “newly discovered evidence” standard.
Therefore, in the present case, the district court had authority to consider — and we have authority to review — only a motion for a new trial based on newly discovered evidence. Neither the district court *362 nor the majority opinion has applied the appropriate standard:
In order to warrant a new trial on the basis of newly discovered evidence, [the defendant] must demonstrate that
(1) the evidence is newly discovered and was unknown to the defendant at the time of trial; (2) failure to detect the evidence was not due to a lack of diligence by the defendant; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence introduced at a new trial would probably produce an acquittal
Unless all factors are met, the motion should be denied.
United States v. Bowler, 252 F.3d 741, 747 (5th Cir.2001) (per curiam) (emphasis added) (quoting United States v. Lowder, 148 F.3d 548, 551 (5th Cir.1998)). When the “evidence goes to the fairness of the trial rather than to the question of guilt or innocence,” the standard is more burdensome still: a defendant must show a “substantial possibility of prejudice.” United States v. Williams, 613 F.2d 573, 573 (5th Cir.1980) (emphasis added).
This is a stringent test, as well it,should be: we have consistently stressed that “[m]otions for a new trial based on newly discovered evidence are disfavored and reviewed with great caution.” Bowler, 252 F.3d at 747 (citing United States v. Gonzalez, 163 F.3d 255, 264 (5th Cir.1998)). Indeed, we recently observed that we knew of no case “in which an appellate court affirmed the grant of a Rule 33 motion on grounds of prosecutorial misconduct unrelated to confidence in the jury verdict, merely as a way to punish contemptuous prosecutors.” United States v. Poole, 735 F.3d 269, 279 (5th Cir.2013). We noted that attorney misconduct, even in the face of ineffective punishment, “[does] not give us license to make Rule 33 something it is not. A new trial remedy is inapposite to the harm where the putative ‘wrong’ has no effect on our confidence in the verdict or the fairness of the trial.” Id. at 279 n. 24. ■
The majority opinion, the district court’s order, and the defendant’s own briefing all stray far from Rule 33(b)(l)’s narrow standard. Perhaps this is because the defendants advance no credible argument that the newly discovered evidence in this case — the identity of the commenters on NOLA.com — would likely produce an acquittal.
The defendants devote only six pages of their 105-page brief to arguing they were actually prejudiced by the government’s conduct; almost none of the contentions in those pages relate to newly discovered evidence. The defendants advance a “theory of government media manipulation,” leading to an “overriding tenor of guilt in the community long before trial” and a “prejudicial, poisonous atmosphere.” Although they assert that “[t]his ‘poisonous atmosphere’ and concerted government misconduct had a substantial deleterious effect on the fairness of appellees’ trial,” they fail to point to any indication of actual prejudice resulting from newly discovered evidence, citing instead to a student note for the proposition that “damaging media spin can ... be used to manipulate negotiation before trial — potentially driving individuals to settle or accept a plea where they otherwise would pursue trial on the merits.”
Fatally to the defendants’ claim, these arguments are not grounded in newly discovered evidence — i.e., the identities of the commenters. Indeed, it is difficult to see how this evidence could possibly have changed the outcome of the proceedings. The district court conducted an extensive voir dire: prospective jurors completed a lengthy questionnaire, and the district court questioned both the venire panel as a *363 whole and individual jurors in chambers. Then, counsel for both parties questioned the jurors based on their answers to the questionnaires. Cf. Skilling v. United States, 561 U.S. 358, 387-92, 130 S.Ct. 2896, 177 L.Ed.2d 619 (2010). As the government notes, “[n]o defendant moved to strike for cause any juror who actually sat on this case.” ■ Throughout the trial, the district court repeatedly instructed jurors to avoid media coverage. It is well settled that “[a] jury is presumed to follow its instructions,” Weeks v. Angelone, 528 U.S. 225, 234, 120 S.Ct. 727, 145 L.Ed.2d 727 (2000), and the defendants have produced no evidence to rebut this well-worn presumption.[5]
Most importantly, the truth about Perricone’s postings came to light long after judgment was entered in this case. Therefore, even if the jurors had disregarded the court’s instructions and read articles on NOLA.com during the trial (we must presume the contrary); even if they had bothered to read the user-generated comments on this public website; and even if they had paid particular attention to the comments posted under Perricone’s or Mann’s aliases, they still would not have known they were receiving impermissible information from a source within the U.S. Attorney’s Office. The post-verdict discovery of the posters’ identities does not change this conclusion,[6] which proves fatal to the defendants’ claim.
The majority opinion reaches a contrary holding.[7] It asserts that this case defies *364 Rule 38 harml'ess-error analysis because the district court could not possibly conduct a sufficiently thorough investigation into the extent of any prejudice. But this renders the standard meaningless. A party is not exempted from proving prejudice merely because it is difficult. On the contrary, a defendant who fails to show prejudice is simply not entitled to a new trial under Rule 33, regardless of the severity of the underlying misconduct. Courts cannot throw up their hands in dismay at the size of the task.[8] Neither we nor the district courts in our circuit may ignore our obligation to apply established rules to the record before us.
Rather than engage in ordinary Rule 33 analysis, the majority opinion discards the established standard and opts for the hy *365 brid-error formulation in footnote nine of Brecht v. Abrahamson, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). I see why the majority finds the Brecht standard alluring: it allows the court to consider allegations of witness intimidation and disparate sentencing practices walled off from our inquiry under a Rule 33 motion for newly discovered evidence.[9] But I am not persuaded that the Brecht standard is cognizable in this procedural posture.
First, this Court cannot sua sponte apply Brecht and ignore Rule 33: we lack authority to affirm a new trial granted without a proper motion. Brown, 587 F.2d at 189 (noting that a district court “is powerless to order a new trial except on the motion of the defendant”). The only motion presented to the district court and properly before us is one grounded on newly discovered evidence under Rule 33(b)(1). Second, neither the majority opinion nor the district court has sought to harmonize Brecht’s hybrid-error formulation with our longstanding five-prong standard for granting a new trial under Rule 33(b)(1). The only logical explanation is that the standards are irreconcilable. Rule 33(b)(1) contemplates a limited inquiry: once the defendant has identified the newly discovered evidence and demonstrated due diligence, relevance, and materiality, the court must look to the prejudicial effect of the omission on the proceedings, as discernible from the record on appeal. See Bowler, 252 F.3d at 747. By contrast, Brecht error was first proposed in a habeas corpus proceeding. See Brecht, 507 U.S. at 622, 638 n. 9, 113 S.Ct. 1710. Courts engaging in collateral review have authority to conduct hearings and collect additional evidence; they are not limited by the record on appeal nor by the requirement that evidence of prejudice be newly discovered. Although I would not foreclose the possibility that a court could analyze Brecht error on direct appeal via a motion for a new trial grounded on reasons other than newly discovered evidence under Rule 33(b)(2), I am hesitant to be the first court in the country to find Brecht error in this procedural posture.
In sum, I would conclude that the district court abused its discretion in granting a new trial. The district court erred in not applying our established Rule 33(b)(1) standard, and the defendants have not carried their heavy burden to prove that “the evidence introduced at a new trial would probably produce an acquittal,” Bowler, 252 F.3d at 747. In holding otherwise, the majority opinion puts us at odds with binding Fifth Circuit precedent as well as authority from our sister circuits.
It is a fundamental tenet of our legal system that neutral rules must be applied evenly to all. We do not — and indeed we cannot — interpret the Federal Rules of Criminal Procedure differently based on the character of the defendant or the circumstances surrounding his trial. The government attorneys acted deplorably in this case, and their punishment has been unconscionably mild. But a new trial is *366 not the proper remedy on the record before us. I respectfully dissent.

. I use “the government attorneys” as shorthand for the handful of individuals in the Eastern District of Louisiana U.S. Attorney’s Office and in the Department of Justice who violated their ethical obligations and posted public comments about their cases on NOLA. com. I do not mean to include the many diligent and ethical attorneys who worked in the Office and the Department during this prosecution or who do so now.

. Several cases refer to the seven-day time period in the previous version of the Rule, which was extended to fourteen days in 2009. Fed.R.Crim.P. 33 advisory committee notes.

.Rule 33's time limit for many years was considered jurisdictional, see, e.g., Brown, 587 F.2d at 189-90 ("A district court has no jurisdiction to consider a new trial motion filed beyond the ... time limit contained in Rule 33.... ” (footnote omitted)), but in 2005 the Supreme Court clarified that Rule 33 is not a jurisdictional rule but a claim-processing one, though "one that is admittedly inflexible,” Eberhart v. United States, 546 U.S. 12, 17-19, 126 S.Ct. 403, 163 L.Ed.2d 14 (2005) (per ' curiam). The effect of this change is that the nonmoving party must raise untimeliness as an affirmative defense, id. at 19, 126 S.Ct. *361 403 — which the Government did in this case, both before the district court and here.

. See also United States v. Gupta, 363 F.3d 1169, 1175-76 (11th Cir.2004) ("[P]ost-verdict renewed motions filed outside the seven-day period and any extension granted during that period are untimely.”); United States v. Jones, 45 Fed.Appx. 271, 272 (4th Cir.2002) (per curiam) ("[A] supplement [that] raised distinct issues from the issues raised in [the defendant's] original motion ... cannot relate back to the original motion for timeliness purposes.”); United States v. Henning, 198 F.3d 247, 1999 WL 1073687, at *2 (6th Cir. 1999) (unpublished) ("Untimely 'renewed' or 'supplemental' motions do not relate back to timely filed motions.”), abrogated on other grounds by Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), as recognized in United States v. Gonzalez, 420 F.3d 111, 123 (2d Cir.2005); United States v. Moreno, 181 F.3d 206, 212 (2d Cir.1999) ("Because this purported motion for a new trial was made far outside the seven-day time limit, and there is no suggestion that the motion is based on newly discovered evidence, it was untimely, and we lack jurisdiction to consider the defendants’ argument on appeal.”); United States v. Custodio, 141 F.3d 965, 966 (10th Cir.1998) ("[A] defendant may not add new arguments in support of a motion for new trial by including them in an amendment filed after the time under Rule 33 has expired.”). But cf. United States v. Cruz-Padilla, 227 F.3d 1064, 1067-68 (8th Cir. 2000) (treating an untimely amendment as relating back where the written motion filed after the deadline "merely renewed [the defendant’s earlier, timely] oral motion on the same grounds, upon which the district court neglected to rule”).

. After the identities of the posters came to light, the district court decided its voir dire was "flawed and insufficient.” The court reached this conclusion primarily because the voir dire questionnaires indicated that seven of the twelve jurors had- visited NOLA.com and the jurors who did not visit NOLA.com tended to agree more strongly with the statement "NOPD officers tend to be honest” than did jurors who were familiar with the site. Id. This is a thin reed on which to build an argument for a new trial. As the government notes, this is too small a sample to reach a statistical conclusion. See Mayor of Phila. v. Educ. Equal. League, 415 U.S. 605, 621, 94 S.Ct. 1323, 39 L.Ed.2d 630 (1974). Indeed, the district court did not find this conclusion significant at the outset of the trial. And, as discussed further in note 14, infra, the district court declined to conduct a post-trial hearing to see whether any of the jurors read articles about this case, let alone the comments, on NOLA.com.

. This Court recently reached the same conclusion in a similar case arising from the online misconduct by lawyers in the U.S. Attorney’s Office, United States v. McRae, No. 14-30995, 795 F.3d 471, 2015 WL 4542651 (5th Cir. July 28, 2015). In my view, McRae applied an appropriately narrow frame of inquiiy. The majority opinion notes the important differences between McRae and the present case. Ante at 361 & n. 27. I write only to express that here, as in McRae, we cannot presume prejudice. McRae, 795 F.3d at 480-84, 2015 WL 4542651, at *6-8. "Without connecting the online comments to the jury, the new evidence does not call into question the integrity of its verdict.” Id. at 481, 2015 WL 4542651 at *7.

.Although the majority opinion holds in the alternative that there was prejudice in this case, its reasoning sweeps far beyond the scope of Rule 33(b)(1): it addresses allegations that the government “pressured cooperating defendants to seek plea deals and then to shade their testimony against the others” and made "threats of perjury charges against defense witnesses, which had never materialized.” Ante at 356. It also looks to harm that "extends not just to jurors but others involved in the case,” such as cooperating defendants and witnesses. Id. at 357-58. But these examples fail to persuade: the district court could have examined the role of plea bargaining, witness tampering, and intimidation had the defendants briefed these matters in their original Rule 33 motions filed shortly after the verdict. They did not. And on the basis of the arguments actually advanced by the defendants, the district court found that a new trial was not warranted. To the extent that the defendants and the majority opinion cite these practices now as evi *364 dence of prejudice, their efforts are unavailing for the simple reason that this evidence is not newly discovered — the only ground for relief invoked by the defendants ' under Rule 33(b)(1).
The majority opinion also finds prejudice based on "the mob mentality potentially inherent in instantaneous, unbridled, passionate online discourse,” ante at 358. It remarks: "That [the government attorneys] were several among dozens of commenters, some of whom may have disagreed with their views, does not dissipate the effect of this online cyberbullying.” Id. The trouble is, the majority opinion fails to show why voir dire was inadequate to insulate the jury from the purported effects of these comments. Nor does it point to portions of the record that show how or why a different outcome might obtain on retrial. Invoking the amorphous specter of social media and cyberbullying — in the district court’s words, an “online 21st century carnival atmosphere,” ante at 339- — is insufficient to free defendants of their obligation to prove that the verdict would probably be different.
In sum, instead of requiring the district court to follow our ordinary procedure for proving prejudice, the majority concludes: "That there was some influence, although un~ quantifiable under these circumstances, seems inescapable.” Ante at 358. This is not enough to support a new trial based on newly discovered evidence. See Bowler, 252 F.3d at 747; United States v. Riley, 544 F.2d 237, 241 (5th Cir.1976) ("The likelihood of changing a jury's decision must rise considerably above the level of speculation in order to justify a new trial.” (emphasis added)).

. The district court expressly declined to hold an evidentiary hearing to determine the extent of prejudice in this case- — offering instead to do so only on remand. December 12 Order and Reasons, at 21 ("Were the Fifth Circuit to agree [that the motion was granted in error], it might well determine that an evidentiary hearing indeed should be held, as was this Court’s initial inclination.”). In fact, although the district court agreed that "obvious questions remained unanswered,” it held out further evidentiary proceedings as a sort of threat should the government appeal: "[F]urther pursuit of testimony and other evidence likely would result in more material revelations confirming the aggressive online activity of DOJ personnel in causing this prosecution to become a cause célebre in this community, and in the DOJ.” Id. at 22. The district court itself acknowledged that a thorough post-verdict voir dire would help determine the extent of any prejudice, id., ("[T]he same type of thorough, searching questions employed during the voir dire process ... would have to be asked of the jurors and key trial witnesses”), and it even suggested some questions it might ask:
[W]hether [the individuals] read particular news articles and/or the comments to the articles on Nola.com during the long times-pan pertinent here and, if so, how often; whether they read or were aware of the particular Nola.com postings at issue here; whether they can remember with certainty if they read or were aware of any of the postings- at issue here; whether during times relevant they discussed the news articles or comments published on Nola.com even if they did not personally read them; whether they or anyone close to them ever posts or blogs online; and what their opinion is, if any, of persons who do post or blog online.
Id. at 22-23. Nevertheless, the district court declined to hold such a hearing. See id. Thus, as the majority seems to accept, the record before us is necessarily devoid of evidence of the impact, if any, of the postings on the jury.

. I do not find the government’s charging practice as outrageous as the majority does: offering a reduced charge or sentence to a collaborating coconspirator is commonplace in the federal system. Rarely, if ever, is it grounds for a new trial. See, e.g., United States v. Cawley, 481 F.2d 702, 709 (5th Cir.1973) (declining to grant a new trial where the defendant alleged newly discovered evidence that an indicted coconspirator was never charged despite self-incriminating testimony at trial and noting that the government "has wide discretion in determining whether a prosecution against a particular individual shall be commenced or maintained’’); see also United States v. Scroggins, 379 F.3d 233 (5th Cir.2004); cf. United States v. Prout, 526 F.2d 380 (5th Cir.1976).