**SOUTHERN PACIFIC COMPANY,**
Appellant,

v.

**Irvin C. FRANCOIS, Sr., Appellee.**

No. 26270.

United States Court of Appeals
Fifth Circuit.

May 20, 1969.

Harry McCall, Jr., Chaffe, McCall, Phillips, Burke, Toler & Sarpy, New Orleans, La., for Southern Pac. Co.

Benjamin E. Smith, Smith, Scheuermann & Jones, New Orleans, La., for Irvin C. Francois, Sr.

Before WISDOM and GODBOLD, Circuit Judges, and HUGHES, District Judge.

PER CURIAM:

Appellant's boxcar doors fell on the appellee. The jury returned a verdict in favor of appellee for $30,700.

Appellant specifies two errors. During the voir dire examination of the jury panel, the judge, while questioning one of the jurors concerning his occupation, ascertained that the man worked around and in boxcars. He asked him generally whether he would require the parties to meet their respective burdens of proof. Following this, the judge asked the juror whether he had any opinion as to what caused the accident, a proper and appropriate question. The prospective juror replied: "I've seen a lot of boxcar doors fall off." Appellant objected, the trial judge instructed the jurors to disregard the remark and excused the juror.

Another juror, called later to replace someone who had been successfully challenged, also had worked around boxcars. The judge asked if he opened the boxcars himself, again an appropriate question to ascertain the degree of familiarity he had with the problem in the case. The juror responded: "I had men to open them, and I opened them, yes, sir. I have seen doors fall off. I have had doors fall off." Objection was made by appellant, coupled with a suggestion that a new panel of jurors be drawn. The colloquy which followed is set out in the margin.[1]

The responses of the jurors do not constitute reversible error in this

[1] "The Court: I can't understand why a juror, after I have instructed another juror not to make such a statement and I told the other jurors to disregard it, why he will come back and do the same thing over. I excused one juror. How did you happen to do that, Mr. Anderson?

"Mr. Anderson: I was just telling the truth.

"Mr. McCall: Your Honor, I would respectfully reurge my suggestion and suggest that we should draw a new panel entirely, because I do think that this is certainly prejudicial.

"The Court: No, I don't think swe [sic] should do that. This situation could be compared to a case involving an automobile accident, and we know that many people have automobile accidents and are injured in automobile accidents, but certainly just because jurors might have had an automobile accident would not be proof of negligence in the case that would be on trial.

"Mr. McCall: If the Court please, from these statements that have been made before this jury panel, I think these jurors can certainly reasonably infer from these statements that falling boxcar doors are a common occurrence.

"The Court: No, nobody said that. They said they fall off. Of course, the question is what caused them to fall. One may fall for one reason, and another for another reason. The question here in this case is whether this door fell and whether or not it fell as a result of negligence on the part of the railroad. That would depend on the proof in this case.

"Mr. Smith: I simply can't see how that is going to harm anything. I suggest we go ahead and select the jury.

"The Court: I am going to excuse Mr. Anderson though."

case. Given the colloquy in front of the jury between the judge and appellant's counsel, note 1, *supra,* the failure directly to admonish the jury to disregard the second remark was not sufficient to require a new trial.[2]

Appellant claims to have been prejudiced by a conversation between appellee's wife and one of the women jurors,[3] which occurred the second day of the trial on a bench in the hall in front of the courtroom in the presence of other jurors, witnesses, and a Southern Pacific representative. Appellant's counsel saw the conversation and immediately notified the judge, who came out into the hall and observed the situation for himself. The judge called to his chambers the juror involved and discussed the incident. She told him that the conversation had to do with children—her children and the children of appellee. Appellant moved for a mistrial. The judge reserved ruling until a verdict was entered and formal motions filed, then denied the motion.

■ To warrant a reversal the contact with the jury must afford reasonable grounds to question the fairness of the trial or the integrity of the verdict. *Annot.,* 64 A.L.R.2d 158, 165–66

(1959). Stated differently, "[t]he solution of this question does not require a positive finding that the jury was actually influenced by what took place; but rather involves a determination as to whether or not it was reasonably certain that they were not." Paramount Film Distributing Corp. v. Applebaum, 217 F.2d 101 (5th Cir. 1954), cert. denied, 349 U.S. 961, 75 S.Ct. 892, 99 L.Ed. 1284 (1955).

The only tangible evidence to which appellant refers in attempting to show prejudice is the amount of damages. Appellant requested over $345,000 in damages, and was awarded slightly over $30,000. There was testimony that he incurred a ten per cent disability. No attack has been made on the sufficiency of the evidence to support the verdict.

■ The trial judge was in the best position to weigh the possibility of prejudice from the conversation. It was not clandestine, and others were present or nearby, including a Southern Pacific representative. The judge himself observed it and promptly interrogated the juror about it. We cannot say that he abused his discretion in denying the motion for mistrial.

Affirmed.

2. Beck v. Wings Field, Inc., 122 F.2d 114 (3d Cir. 1941), relied upon by appellant, is distinguishable. A witness, an experienced flier, was called for the purpose of giving his opinion as to a depression in the portion of the air field where plaintiff was attempting to make his landing and where the accident occurred. After eliciting from him his qualifications as a pilot and his knowledge of air fields in general and of the defendant's field in particular, plaintiff's attorney asked whether he was familiar with the scene of the accident, to which the witness responded, "Yes, sir, I cracked up in the same ditch." This remark was not only gratuitous, but was also an exaggeration of the facts.

The more apposite case is Chapman v. Brown, 198 F.Supp. 78 (D.Hawaii 1961),

aff'd on other grounds, 304 F.2d 149, 4 A.L.R.3d 490 (9th Cir. 1962), a case arising out of a hula skirt that caught fire while being worn at a party. There, it was urged in a motion for new trial that the court erred in denying the defendant's motion for a mistrial and for the discharge of jury panel during voir dire examination when one of the prospective jurors said he was convinced that all hula skirts should be treated to be fire resistant. The juror was excused, and the court satisfied itself by inquiry that the jurors would not be influenced to the detriment of defendants.

3. Separate motions by appellant and appellee to supplement the record on this issue, previously ordered carried with the case, are hereby granted, and we have considered the supplementary matter.