# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-30940

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

RENEE GILL PRATT,

Defendant–Appellant.

United States Court of Appeals
Fifth Circuit

**FILED**
November 13, 2015

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:08-CR-140-4

Before KING, DENNIS, and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:*

A jury convicted Defendant-Appellant Renee Gill Pratt (Pratt) of conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act,[1] and this court affirmed the conviction on appeal.[2] Pratt then filed a motion for a new trial, citing revelations that a prosecutor in the U.S. Attorney's Office had posted disparaging comments about her online while her

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] 18 U.S.C. § 1962(d).

[2] *United States v. Pratt*, 728 F.3d 463 (5th Cir. 2013), *cert. denied*, 134 S. Ct. 1328 (2014).

No. 14-30940

trial was underway. Pratt appeals the district court's denial of this motion, contending that the prosecutor's misconduct entitled Pratt to a presumption of juror prejudice. We affirm.

**I**

This case emerged from a broad federal investigation of a prominent Louisiana family. Pratt was a Louisiana state representative from 1991 to 2002 and a member of the New Orleans City Council from 2002 to 2006.[3] She was also the longtime companion of Mose Jefferson, who was a political organizer and brother of former Congressman William Jefferson. The indictment alleged that Pratt and her co-defendants—three members of the Jefferson family—conspired to direct grants and other government funding to charitable organizations under their control for their personal benefit. After two co-defendants pleaded guilty and a third developed health problems, prosecutors proceeded to trial against Pratt alone. The first trial resulted in a hung jury, but Pratt was convicted following a second trial in July 2011. This court affirmed the conviction in August 2013.[4]

While Pratt's appeal was pending, the U.S. Attorney's Office for the Eastern District of Louisiana (USAO) admitted that over the course of several years, one of its prosecutors had posted online comments on a range of matters in which the office was involved.[5] An internal investigation and litigation in other cases revealed that two other attorneys, one from the USAO and one

---

[3] Counsel for the defendant uses "Gill Pratt" as her surname, while the Government simply uses "Pratt." We adopt the latter convention here for consistency with this court's 2013 decision.

[4] *Pratt*, 728 F.3d at 482.

[5] *See* Office of Professional Responsibility, Department of Justice, *Investigation of Allegations of Professional Misconduct Against Former Assistant United States Attorneys Salvador Perricone and Jan Mann* 2 (2013) (OPR Report), http://theadvocate.com/news/neworleans/neworleansnews/11990897-123/see-the-full-justice-department.

from Justice Department headquarters, had authored dozens of other online comments.[6] These anonymous comments were posted on nola.com, the website of the widely-read New Orleans *Times-Picayune*, and appeared below articles on the site interspersed with comments from other readers.

Salvador Perricone was responsible for the vast majority of the discovered comments, including all but two of those potentially relevant here. Perricone, an Assistant U.S. Attorney at the USAO with the title of Senior Litigation Counsel,[7] posted his views on many aspects of Louisiana politics under a variety of pseudonyms. A number of the posts were "long tirades against the Jefferson family in general," while others specifically referred to Pratt's case. While Pratt's first trial was underway, for example, Perricone commented: "If Pratt walks, it's the judge's victory. It will be a sad day for justice." When a mistrial was declared, Perricone opined that the holdout juror "failed to honor her oath" and insinuated that she did so because of her race. The day before the jury began its deliberations in Pratt's second trial, Perricone posted another comment critical of Pratt. Although Perricone was not involved in Pratt's prosecution, he was the lead prosecutor during an earlier trial of Mose Jefferson for bribery. An investigation by the Justice Department's Office of Professional Responsibility did not find proof that Perricone's supervisors were aware of his online commenting at the time, but a judge in a related case found what he considered circumstantial evidence to the contrary.[8] An AUSA expressed his concern to three mid-level supervisors that

---

[6] *United States v. Bowen*, 799 F.3d 336, 342-43, 346 (5th Cir. 2015) (describing comments posted by Jan Mann, First Assistant U.S. Attorney at the USAO, and Karla Dobinski, trial attorney in the Justice Department's Civil Rights Division).

[7] OPR Report at 2, 8.

[8] *United States v. Bowen*, 969 F. Supp. 2d 518, 531 (E.D. La. 2012), *aff'd*, 799 F.3d 336 (5th Cir. 2015).

No. 14-30940

Perricone was responsible for certain comments on nola.com, but he did not share that concern with the U.S. Attorney or the First Assistant U.S. Attorney.

The other two anonymous comments related to Pratt's case were posted by Jan Mann, the USAO's First Assistant U.S. Attorney and chief of its Criminal Division. Mann's two comments—which were posted while Pratt's first appeal was pending—proclaimed Pratt's guilt, defended Pratt's sentence, and characterized Pratt as driven by greed.[9]

Once the prosecutors' anonymous online commenting was exposed, Pratt moved for an evidentiary hearing and a new trial based on newly discovered evidence. She argued that Perricone's comments were designed to incite public prejudice against her and added that Perricone "almost certainly" acted with the approval of Mann. Cases of serious prosecutorial misconduct, Pratt argued, may so pollute a criminal prosecution as to require a new trial. Pratt asserted that six of the twelve jurors reported getting their news from the Internet, and two of them volunteered that nola.com was among their sources of news. Pratt sought a broad evidentiary hearing to determine whether Perricone's supervisors condoned his anonymous commenting, whether any other employees of the USAO were commenting anonymously, and whether the jurors were prejudiced by exposure to the online comments or various leaks of confidential information.

In June 2014, the district court heard argument on the pending motion. The court considered the law governing orders for a new trial based on newly discovered evidence, as well as proceedings in related cases arising out of Perricone's anonymous commenting. It then announced its intention to hold a limited evidentiary hearing to "develop[] a clearer record" of any influence the anonymous comments may have had on Pratt's trial. That hearing, it said,

---

[9] OPR Report at 42 (reproducing comments posted in November 2011).

would take the form of a questionnaire submitted to the two jurors who had identified nola.com as among their sources of news. Counsel were invited to submit proposed questions or submit proposals as to the scope of the hearing; Pratt renewed her request for "further investigation" into the misconduct at issue, but the court demurred. The two jurors reported no exposure to the nola.com comments before or during Pratt's trial.

Based on this information, the district court denied Pratt's motion for a new trial, citing a "lack of evidence that the jury's verdict was tainted in any way by Perricone's or anyone else's comments." Addressing Pratt's argument that the misconduct was so extraordinary that no finding of prejudice was required, the court echoed this court's recent holding that a new trial is a means to avoid injustice, not to punish the government's contempt.[10] The completed questionnaires, the district court reasoned, revealed that the jurors "heeded the Court's instructions to avoid extraneous materials in reaching their verdict" and accordingly, there was no indication that the integrity of the verdict was compromised. Pratt timely appealed.

## II

We review a district court's order denying a motion for a new trial for abuse of discretion.[11] Questions of law are reviewed de novo, "but the district court's findings of fact must be upheld unless they are clearly erroneous."[12]

Federal Rule of Criminal Procedure 33 provides that the court may vacate a judgment and grant a new trial "if the interest of justice so requires."[13]

---

[10] *See United States v. Poole*, 735 F.3d 269, 278 (5th Cir. 2013).

[11] *United States v. Wall*, 389 F.3d 457, 465 (5th Cir. 2004) (citing *United States v. O'Keefe*, 128 F.3d 885, 893 (5th Cir. 1997)).

[12] *United States v. Bowen*, 799 F.3d 336, 349 (5th Cir. 2015) (citing *United States v. Mann*, 161 F.3d 840, 860 (5th Cir.1998)).

[13] FED. R. CRIM. P. 33(a).

Rule 33 motions are "disfavored" and reviewed with "great caution."[14] Defendants seeking a new trial based on newly discovered evidence ordinarily must show (among other things) that the evidence is material and "would probably produce an acquittal" if introduced in new proceedings.[15]

However, Rule 33 motions are sometimes based on the "fairness of the trial" rather than the "question of guilt or innocence."[16] In such cases, the inquiry turns on whether the newly discovered evidence "afford[s] reasonable grounds to question . . . the integrity of the verdict."[17] For a new trial to be warranted, the court "must . . . normally find that the misconduct in question actually prejudiced the defense."[18] Indeed, we have cautioned that "a new trial is not a mechanism for punishing contempt, by a prosecutor or otherwise, but a way to avoid injustice generally and to avoid a jury verdict for which one has compromised confidence specifically."[19]

A panel of this court, however, recently recognized a significant but rarely applicable exception to the rule that the demonstration of prejudice is a prerequisite for the grant of a new trial. In *United States v. Bowen*, the panel relied on *Brecht v. Abrahamson* to conclude that some errors are "capable of infecting the integrity of the prosecution to a degree warranting a new trial irrespective of prejudice."[20] In *Brecht*, after determining which harmless-error

---

[14] *United States v. Turner*, 674 F.3d 420, 429 (5th Cir. 2012) (quoting *United States v. Severns*, 559 F.3d 274, 280 (5th Cir. 2009)).

[15] *Wall*, 389 F.3d at 467; *see* FED. R. CRIM. P. 33(b)(1).

[16] *United States v. Williams*, 613 F.2d 573, 575 (5th Cir. 1980) (citing *United States v. Jones*, 597 F.2d 485, 488 (5th Cir. 1979)); *see also Bowen*, 799 F.3d at 349 (citing 3 CHARLES ALAN WRIGHT & SARAH N. WELLING, FEDERAL PRACTICE AND PROCEDURE § 588, at 448 (4th ed. 2011)) (stating that newly discovered evidence "need not relate only to guilt or innocence, but may be relevant to any controlling issue of law").

[17] *Williams*, 613 F.2d at 575 (quoting *S. Pac. Co. v. Francois*, 411 F.2d 778, 780 (5th Cir. 1969)).

[18] *Bowen*, 799 F.3d at 356 (citing *United States v. Bowler,* 252 F.3d 741, 747 (5th Cir. 2001)).

[19] *United States v. Poole*, 735 F.3d 269, 278 (5th Cir. 2013).

[20] *Bowen*, 799 F.3d at 353 (citing *Brecht v. Abrahamson*, 507 U.S. 619, 638 n.9 (1993)).

standard applies on habeas review when a conviction marred by "trial error" is at issue, the Supreme Court stated: "[I]n an unusual case, a deliberate and especially egregious error of the trial type, or one that is combined with a pattern of prosecutorial misconduct, might so infect the integrity of the proceeding" that a grant of habeas relief is warranted "even if it did not substantially influence the jury's verdict."[21] The *Bowen* panel reasoned that in this circuit, the "hybrid" errors described by *Brecht* "require reversal regardless of harm,"[22] and concluded that *Brecht*'s logic was equally applicable in the context of a Rule 33 motion for a new trial.[23]

The panel's decision in *Bowen* arose in response to the same online commenting scandal underlying Pratt's case. It is one of two cases recently decided by this court that frame the issue of when a presumption of prejudice is warranted. The defendants in *Bowen* were police officers convicted of shooting unarmed civilians on the Danziger Bridge in New Orleans six days after Hurricane Katrina.[24] The officers were the focus of a number of vituperative comments posted anonymously by Perricone.[25] *Bowen*, however, was a remarkable case, because of other alleged misconduct at issue.[26] In addition to Perricone, the leader of the prosecutors' "taint team" also anonymously posted comments on nola.com while the trial was underway.[27] The Government's response to the district court's inquiry into the anonymous

---

[21] *Brecht*, 507 U.S. at 638 n.9.

[22] *Bowen*, 799 F.3d at 352 (citing *Burgess v. Dretke*, 350 F.3d 461, 471 (5th Cir. 2003)).

[23] *Id.* at 355 n.26.

[24] *Id.* at 339.

[25] *Id.* at 340-41.

[26] *See generally id.* at 340-48; *United States v. Bowen*, 969 F. Supp. 2d 546, 578-615 (E.D. La. 2013), *aff'd*, 799 F.3d 336 (5th Cir. 2015).

[27] *Bowen*, 799 F.3d at 349-51. The responsibility of the "taint team" was to review evidence provided to prosecutors to ensure it was not tainted by the officers' compelled testimony. *Id.* at 345 & n.12.

comments was "incomplete, dilatory, and evasive."[28]  A wide range of other misconduct was at issue as well.  Specifically, the district court found that an FBI agent assigned to the case had "threatened a potential defense witness," that prosecutors threatened to try three potential defense witnesses for perjury if they testified, that prosecutors called a witness whose testimony was "inconsistent and incredible," and that plea deals offered to some defendants resulted in a "stark" sentencing disparity between those who cooperated and those who did not.[29]

In affirming the district court's grant of a new trial, the panel acknowledged that the district court's reasons for granting a new trial were "novel and extraordinary."[30]  "[T]he full consequences of the federal prosecutors' misconduct remain uncertain after less-than-definitive DOJ investigations," the panel concluded, and the trial was "permeated by the cumulative effect" of the other irregularities identified by the district court.[31] Citing the "breadth of the government's misconduct and continued obfuscation" in the case, which "prevented the district court from evaluating the fairness of the defendants' trial," the *Bowen* panel held *Brecht*'s footnote nine applicable and affirmed the district court.[32]  The panel also concluded, in the alternative, that the defense adequately proved prejudice stemming from the misconduct.[33]

Confronted with more limited misconduct with a more attenuated connection to the trial, a panel of this court reached the opposite result in

---

[28] *Id.* at 351.
[29] *Id.* at 347-48.
[30] *Id*. at 339.
[31] *Id*. at 340.
[32] *Id*. at 353.
[33] *Id*. at 355-59.

*United States v. McRae*.[34]  There, the district court denied Gregory McRae's motion for a new trial after the anonymous online commenting scandal broke.[35] McRae—a police officer who had been convicted of civil rights violations in the wake of Hurricane Katrina—was the subject of a number of disparaging anonymous comments by Perricone on nola.com.[36]

On appeal, the *McRae* panel affirmed the district court's holding that a presumption of prejudice was inappropriate in that case.[37]  The panel concluded that McRae had failed to "prove a connection between the postings in question and the conduct of the trial, such that we must question our 'confidence in the jury verdict.'"[38]  Noting that the comments were "a small handful out of hundreds of anonymous, speculative postings" on a single website and contained no "blatantly prejudicial information," the panel saw "nothing to suggest that any jury member saw any of [the online comments at issue]."[39]  While acknowledging that the Supreme Court has endorsed a presumption of prejudice in certain "extreme case[s]" of pre-trial publicity, the panel concluded it was plainly inapplicable in McRae's case due to the factors cited above.[40]

The *McRae* court went on to determine that despite Perricone's affiliation with the U.S. Attorney's Office, there was no ground to presume prejudice based on prosecutorial misconduct.  We distinguished cases in which prosecutors made "public, prejudicial statement[s] about the case that [were] prominently covered by the local media."[41]  Given the "anonymous, relatively

---

[34] 795 F.3d 471 (5th Cir. 2015).

[35] *Id.* at 481.

[36] *Id.* at 475-76.

[37] *Id.* at 481.

[38] *Id.* (quoting *United States v. Poole*, 735 F.3d 269, 279 (5th Cir. 2015)).

[39] *Id.* at 481, 482.

[40] *Id.* at 482 (quoting *Skilling v. United States*, 561 U.S. 358, 381 (2010)).

[41] *Id.* at 483.

No. 14-30940

low-profile" character of Perricone's comments and his lack of affiliation with the trial team, the panel held that the district court did not abuse its discretion by refusing to order a new trial.[42]

## III

Pratt's only contention on appeal is that the district court should have applied a presumption of prejudice. As her counsel admitted in the briefs and at oral argument, Pratt does not dispute the court's findings that she was not actually prejudiced by the misconduct. To determine whether the district court abused its discretion by failing to presume prejudice, we first analyze Pratt's allegations concerning Perricone's comments and then turn to her allegation that prosecutors undertook a "cover up" and were responsible for various leaks in a related case.

## A

We begin with Perricone's comments. Simply put, we conclude that the prosecutorial misconduct in question is too far removed from the proceedings to support a presumption of prejudice.

A number of considerations support this conclusion. First, Perricone had no responsibility for the Pratt trial, and no one from the trial team posted comments about Pratt while the trial was underway. To be sure, Perricone worked in the same U.S. Attorney's Office as the prosecutors who tried Pratt's case, and Mann—First Assistant U.S. Attorney and Chief of the USAO's Criminal Division—posted two comments about Pratt's trial after it had concluded.[43] But in *Bowen*, by contrast, one of the commenters was the leader of the "taint team," had testified before the judge in a hearing related to the case, and posted her comments while the case was still in the jury's hands.

---

[42] *Id.*
[43] OPR Report at 42.

No. 14-30940

Second, unlike the situation in *Bowen*, there is no allegation here that the prosecution engaged in dilatory tactics or misrepresentations before the district court. The district court in *Bowen* concluded that, in the unique circumstances of that case, a further inquiry was required to ascertain whether the verdict had been tainted by misconduct.[44] The *Bowen* panel concluded that the government's conduct in that case inhibited that inquiry by preventing the district court from "uncover[ing] the extent of the prosecution's transgressions" or "determin[ing] the severity of the prejudice" suffered by the defendants.[45] Here, by contrast, the district court concluded that the limited evidentiary hearing he conducted was sufficient to dispel any doubt as to the integrity of the verdict, and we have no reason to doubt that conclusion.

Third, the numerous examples of prosecutors' sharp practice catalogued by the district court and credited by this court in *Bowen* have no parallel here. In *Bowen*, the district court faulted the prosecution and FBI for intimidating prospective witnesses, sponsoring a witness whose testimony was "inconsistent and incredible", and creating a "stark" disparity in sentences by offering excessive leniency to officers who cooperated.[46] The prosecution in this case has not been accused of similar conduct.

Fourth, appellate review of district courts' Rule 33 decisions are "necessarily deferential to the trial court."[47] We discern no error in the district court's findings that the jury was untainted by Perricone's comments and that nothing in the prosecutors' conduct implicated the integrity of the verdict in Pratt's case.

---

[44] *United States v. Bowen*, 969 F. Supp. 2d 546, 553 (E.D. La. 2013), *aff'd*, 799 F.3d 336 (5th Cir. 2015).

[45] *Bowen*, 799 F.3d at 353.

[46] *Id.* at 347.

[47] *Id.* at 357 n.27 (quoting *United States v. Wall*, 389 F.3d 457, 465 (5th Cir. 2004)).

11

No. 14-30940

Finally, we note that while prosecutorial misconduct is one route to a presumption of prejudice, it is not the only one. In certain "extreme" cases, pretrial publicity of any kind—not just pretrial publicity stoked by prosecutors—can "manifestly taint[] a criminal prosecution"[48] and give rise to a presumption of prejudice.[49] But this is not such an extraordinary case. Instead, this case concerns a "handful" of "anonymous, speculative postings" that were clearly disparaging but lacked the kind of "blatantly prejudicial information"—such as a confession—that might poison public opinion and entitle the defendant to a presumption of prejudice.[50]

Taken together, these considerations support the conclusion that Perricone's comments did not so "infect[] the integrity of the prosecution" that a new trial is warranted.[51]

## B

Pratt also argues that other misconduct she attributes to the prosecution gives rise to a presumption of prejudice. She points to the government "cover-up" in response to the district court's inquiry in *Bowen*, as well as two unauthorized disclosures of nonpublic information related to the investigation of Mose Jefferson, in support of her claim.

Her argument is without merit. Pratt adduces no evidence that the leaks were part of any campaign against her or the Jefferson family. What is more, Pratt does not explain how the leaks and comments in other cases implicate the integrity of the verdict in *her* case, except to say that "they were part of the barrage of negative publicity against the Jeffersons that prejudiced Gill Pratt

---

[48] *Skilling v. United States*, 561 U.S. 358, 379 (2010); *see also United States v. McRae*, 795 F.3d 471, 481-82 (5th Cir. 2015).

[49] *Skilling*, 561 U.S. at 381.

[50] *See McRae*, 795 F.3d at 482 (quoting *Skilling*, 561 U.S. at 382).

[51] *See United States v. Bowen*, 799 F.3d 336, 351 (5th Cir. 2015) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 638 n.9 (1993)).

No. 14-30940

due to her long-time association with Mose." Pratt provides no authority for the proposition that conduct so remotely related to her case could warrant a new trial. The district court did not abuse its discretion by denying her motion.

\*    \*    \*

Because the prosecutorial misconduct at issue in this case does not give rise to a presumption of prejudice, we AFFIRM the district court's denial of Pratt's motion for a new trial.