# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 13-31078

UNITED STATES OF AMERICA,

Plaintiff-Appellant

v.

KENNETH BOWEN; ROBERT GISEVIUS; ROBERT FAULCON;
ANTHONY VALLAVASO; ARTHUR KAUFMAN,

Defendants-Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC Nos. 2:10-CR-204-1-5

ON PETITION FOR REHEARING EN BANC

(Opinion August 18, 2015, 799 F.3d 336)

Before JONES, CLEMENT, and PRADO, Circuit Judges.[*]

PER CURIAM:

Treating the petition for rehearing en banc as a petition for panel
rehearing, the petition for panel rehearing is DENIED. The court having been
polled at the request of one of its members, and a majority of the judges who
are in regular active service and not disqualified not having voted in favor

---

[*] Judge Stephen A. Higginson is recused in this case.

No. 13-31078

(FED. R. APP. P. 35 and 5TH CIR. R. 35), the petition for rehearing en banc is DENIED.

In the en banc poll, 7 judges voted in favor of rehearing (Chief Judge Stewart, and Judges Davis, Dennis, Prado, Southwick, Graves, and Costa), and 7 judges voted against rehearing (Judges Jolly, Jones, Smith, Clement, Owen, Elrod, and Haynes).

ENTERED FOR THE COURT:

_____

EDITH H. JONES
United States Circuit Judge

No. 13-31078

PRADO, Circuit Judge, joined by STEWART, Chief Judge, DAVIS, DENNIS, SOUTHWICK, GRAVES, and COSTA, Circuit Judges, dissenting from Denial of Rehearing En Banc,

Six days after Hurricane Katrina made landfall, a group of heavily-armed New Orleans police officers opened fire on eight unarmed black pedestrians near the Danziger Bridge in New Orleans, Louisiana, killing two and wounding four. Among the victims was a mentally disabled man who was shot in the back as he tried to escape. In the weeks that followed, the officers orchestrated an elaborate cover-up, planting evidence and framing one of the surviving victims for the shooting. The officers were eventually indicted and convicted on numerous federal civil rights and firearms charges and sentenced to lengthy terms of imprisonment.

Nearly a year after their conviction, the officers filed a motion for new trial based on newly discovered evidence under Federal Rule of Criminal Procedure 33(b)(1). To affirm the district court's grant of a new trial under Rule 33(b)(1), the majority opinion goes to great lengths to stretch dicta from footnote nine of *Brecht v. Abrahamson*, 507 U.S. 619 (1993), beyond the habeas context. The Government's petition for rehearing in this case does not merely involve a reasonable disagreement about how to resolve a close legal dispute. Rather, it presents an important issue of first impression—the importation of habeas doctrine into our Rule 33 case law, specifically, the extension of *Brecht*'s footnote nine to a motion for new trial under Rule 33(b)(1). Yet, our Court was prevented from taking this case en banc by a deadlocked, 7–7 vote. Because the majority opinion ignores long-standing Rule 33 precedent and fails to adequately distinguish our opinions in *United States v. McRae*, 795 F.3d 471 (5th Cir. 2015), and *United States v. Poole*, 735 F.3d 269 (5th Cir. 2013), I

strongly believe this case is worthy of our full Court's attention and therefore respectfully dissent from denial of rehearing en banc.

To succeed under a Rule 33(b)(1) motion for new trial, the officers needed to present newly discovered evidence that was not introduced at their original trial. Fed. R. Crim. P. 33(b)(1). The officers also needed to demonstrate that failure to introduce this evidence caused them prejudice, such that if their newly discovered evidence was "introduced at a new trial [the evidence] would probably produce an acquittal." *United States v. Bowler*, 252 F.3d 741, 747 (5th Cir. 2001) (alteration in original) (quoting *United States v. Lowder*, 148 F.3d 548, 551 (5th Cir. 1998)). Our Court has also recognized a corollary to this requirement where the "newly discovered evidence would 'afford reasonable grounds to question . . . the integrity of the verdict.'" *United States v. Williams*, 613 F.2d 573, 575 (5th Cir. 1980) (quoting *S. Pacific Co. v. Francois*, 411 F.2d 778, 780 (5th Cir. 1969)). The officers are unable to meet either of these requirements.

The only newly discovered evidence at issue is the identity of three anonymous commenters on Nola.com, the Times-Picayune's website. Under anonymous pseudonyms, two Assistant United States Attorneys and an attorney from the Civil Rights Division of the Department of Justice posted comments on Nola.com about the Danziger Bridge shooting and the prosecution of the officers involved. But there is no indication that their identities were known to the jury at the time of the trial. Even if the jurors had disregarded the court's instructions and read articles on NOLA.com during the trial (we must presume they did not, *see Weeks v. Angelone*, 528 U.S. 225, 234 (2000)); had bothered to read the user-generated comments on any of the articles; and had paid particular attention to the comments posted under the

Government attorneys' aliases, they still would not have known they were receiving impermissible information from a Government source.

The district court was undoubtedly aware that this case had attracted intense media attention and was aware of coverage by the Times-Picayune, including articles posted to Nola.com. In fact, the court specifically asked jurors about this coverage and whether they visited the website. As a result of the district court's diligence, "[t]here is no dispute that the district court conducted a thorough and conscientious jury voir dire based on the information known at the time." *United States v. Bowen*, 799 F.3d 336, 340–41 (5th Cir. 2015) (majority opinion).

The majority also spends a great deal of ink discussing prosecutorial misconduct committed post-verdict, focusing on misrepresentations made to the district court during proceedings related to the officers' Rule 33(b)(1) motion. But this conduct, simply as a matter of chronology, could not have had any effect on the verdict. As the officers have failed to demonstrate that any newly discovered evidence has actually prejudiced them, their motion fails under either of the well-settled categories of Rule 33(b)(1).

Unsatisfied with this outcome, the majority invents a new form of post-conviction relief in which a Rule 33(b)(1) motion can be granted without any showing of prejudice or effect on the jury's verdict. The majority opinion creates this new category by importing dicta in footnote nine of *Brecht* to completely erase the requirement that the newly discovered evidence must have had some actual effect on the jury's verdict.

In *Brecht*, the Supreme Court held that petitioners cannot receive relief from a writ of habeas corpus based on trial error unless they have demonstrated that the error actually prejudiced the petitioner. 507 U.S. at 637. Dicta in footnote nine of *Brecht* left open the possibility that in a future,

particularly egregious case involving trial error habeas relief could be granted without a showing of prejudice. The majority opinion not only thinks that they have found such a case but that the Supreme Court intended this exception to apply to motions for new trial under Rule 33(b)(1). Even assuming that the facts of this case would fit within the scope of footnote nine, which I believe is a questionable assumption, the majority fails to adequately demonstrate why or how habeas case law applies to a Rule 33(b)(1) motion.

Even more concerning is the fact that the majority's opinion opens the door for further extension of *Brecht*'s footnote nine. Calling the misconduct here "*sui generis,*" *Bowen*, 799 F.3d at 351–52, regardless of whether one agrees with that characterization, will not discourage lawyers and judges from drawing on *Bowen* in future cases to claim that prejudice is not required or that *Brecht*'s footnote nine applies in other procedural postures. Even if future courts never grant a Rule 33(b)(1) motion due to *Brecht* error again, dealing with such a fact-intensive inquiry will take valuable time and judicial resources. Further, the majority's importation of *Brecht*'s footnote nine into our Rule 33 case law opens the door for additional expansion of Rule 33 by importing other habeas doctrines into Rule 33(b)(1) motions, blurring the line between direct and collateral review. Because I believe that this extension is unwarranted, creates tension in our case law, and opens the door to continued expansion of Rule 33, I respectfully dissent from denial of rehearing en banc.